No. 101,213

STATE OF KANSAS, *Appellee*, v. ALEJANDRO GOMEZ, *Appellant*.

(235 P.3d 1203)

Opinion filed July 9, 2010.

*Matthew J. Edge*, of Kansas Appellate Defender Office, was on the brief for appellant.

*David Lowden*, chief attorney, appellate division, *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: Alejandro Gomez pleaded guilty to one count of aggravated indecent liberties with a child under the age of 14, in violation of K.S.A. 2006 Supp. 21-3504(a)(3). The district court denied his motion for a durational departure sentence and sentenced him to life in prison with a mandatory minimum sentence of 25 years under K.S.A. 2006 Supp. 21-4643(a)(1)(C), commonly known as Jessica's Law. The district court also imposed postrelease supervision for life pursuant to K.S.A. 2006 Supp. 22-3717(d)(1)(G), (d)(2)(C).

For the first time on appeal, Gomez challenges his sentence as a cruel and/or unusual punishment under the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitu-

tion Bill of Rights, arguing the sentence is disproportionate. In response, the State argues Gomez is not entitled to a proportionality review under the Eighth Amendment and his failure to make a specific objection and to present a basis for his challenge while in the district court is fatal to his request for review on the merits. We reject the State's argument that a proportionality challenge is not allowed under the Eighth Amendment in light of the recent decision in *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825, (2010), which was decided after this case was submitted to this court. However, we agree with the State's argument that Gomez' failure to preserve the issues precludes our review.

## FACTUAL AND PROCEDURAL BACKGROUND

Under the plea agreement, Gomez was free to seek a durational departure sentence, but the State could oppose such a request. There was no indication in the plea agreement that Gomez would argue the unconstitutionality of the life sentence.

As permitted under the agreement, Gomez filed a motion for a sentencing departure based on several alleged factors, including his accepting responsibility for the crime, his cooperation with law enforcement during the investigation, his remorse, his lack of criminal history, his risk of being deported, and an evaluation, not included in the record on appeal, indicating Gomez' "low risk" of recidivism and the absence of "danger to the public." After considering the mitigating factors presented by Gomez, the district court denied his motion for a durational departure sentence, finding no substantial and compelling reason to depart from the minimum statutory sentence.

Gomez did not raise a cruel and unusual punishment argument in his motion for departure or in his oral arguments at the sentencing hearing. Nor did he ask for findings relating to the cruel and unusual nature of the sentence.

Gomez filed a timely appeal. This court's jurisdiction is under K.S.A. 22-3601(b)(1) (off-grid crime; life sentence).

## CRUEL AND/OR UNUSUAL PUNISHMENT

Gomez does not separately analyze his claims that his life sentence imposed upon him under K.S.A. 2006 Supp. 21-4643(a)(1)(C)

violates the constitutional prohibition against cruel and unusual punishment found in the Eighth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, and against cruel or unusual punishment found in § 9 of the Kansas Constitution Bill of Rights. Nevertheless, the State appropriately separates the analysis, and we will as well.

*Issue Raised for First Time on Appeal*

There is, however, a threshold question that applies to both the federal and state constitutional issues: Can Gomez' cruel and unusual punishment arguments be considered for the first time on appeal? This court has held, in general, that constitutional issues cannot be raised for the first time on appeal. *State v. Ortega-Cadelan,* 287 Kan. 157, 159, 194 P.3d 1195 (2008). Three exceptions to the general rule (hereinafter referred to as *Pierce* exceptions) have been recognized, however. They are: "(1) The newly asserted claim involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and (3) the district court is right for the wrong reason." *Ortega-Cadelan,* 287 Kan. at 159; see *Pierce v. Board of County Commissioners,* 200 Kan. 74, 80-81, 434 P.2d 858 (1967).

Gomez argues his case falls within the first and second *Pierce* exceptions because the issue only involves a question of law and relates to the fundamental right that prohibits cruel and unusual punishment. The State also argues that the first *Pierce* exception applies, but only to the extent of considering whether as a matter of law a defendant may make an Eighth Amendment proportionality claim. Any further analysis, the State argues, fails to satisfy any of the three exceptions.

*Eighth Amendment*

The State's argument, in part, is that the United States Supreme Court's decisions in *Ewing v. California,* 538 U.S. 11, 155 L. Ed. 2d 108, 123 S. Ct. 1179 (2003); *Lockyer v. Andrade,* 538 U.S. 63, 155 L. Ed. 2d 144, 123 S. Ct. 1166 (2003); *Harmelin v. Michigan,* 501 U.S. 957, 115 L. Ed. 2d 836, 111 S. Ct. 2680 (1991); *Solem v. Helm,* 463 U.S. 277, 77 L. Ed. 2d 637, 103 S. Ct. 3001 (1983), and

*Rummel v. Estelle*, 445 U.S. 263, 63 L. Ed. 2d 382, 100 S. Ct. 1133 (1980), effectively eliminated proportionality claims made under the Eighth Amendment. The State was not alone in this assessment. In 1980, this court concluded that the United States Supreme Court "in *Rummel* essentially rejects the proposition that disproportionality analysis is required by the 8th Amendment. The length of sentence imposed on felons is solely a legislative decision." *State v. McDaniel & Owens*, 228 Kan. 172, 184, 612 P.2d 1231 (1980). The decisions subsequent to *Rummel*, in the Supreme Court's own words, did "not [establish] a clear or consistent path for courts to follow" regarding proportionality challenges. *Lockyer*, 538 U.S. at 72.

Nevertheless, on May 17, 2010, the Supreme Court called this court's conclusion in *McDaniel* into doubt when it announced:

"The concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.' *Weems v. United States*, 217 U.S. 349, 367, 54 L. Ed. 793, 30 S. Ct. 544, (1910)." *Graham*, 560 U.S. at _____.

In light of this holding, we cannot accept the State's argument that Gomez cannot as a matter of law make a proportionality claim based on the Eighth Amendment.

This limited question of law is the only question regarding which the parties agree that one of the *Pierce* exceptions might apply. The State argues that any other aspect of Gomez' proportionality arguments includes factual components that must be raised before the district court. However, this argument was made pre-*Graham* and focused on an analysis under the Kansas Constitution. We must determine whether the argument is valid given the analytical framework established in the *Graham* decision. *Graham* does not directly answer the question, but the opinion aids our determination of whether one of the *Pierce* exceptions applies.

Specifically, we find guidance in the *Graham* Court's statement of the test to be applied to a proportionality challenge. In that discussion, the *Graham* Court discussed its past decisions and placed those decisions into two general classifications. "The first involves challenges to the length of term-of-years sentences given

all the circumstances in a particular case. The second comprises cases in which the Court implements the proportionality standard by certain categorical restrictions on the death penalty." *Graham,* 560 U.S. at ____. In explaining the analysis under the first category, the Court stated:

"The controlling opinion in *Harmelin* explained its approach for determining whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime. A court must begin by comparing the gravity of the offense and the severity of the sentence. 501 U.S., at 1005 (opinion of KENNEDY, J.). '[I]n the rare case in which [this] threshold comparison . . . leads to an inference of gross disproportionality' the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. [Citation omitted.] If this comparative analysis 'validate[s] an initial judgment that [the] sentence is grossly disproportionate,' the sentence is cruel and unusual. [Citation omitted.]" *Graham,* 560 U.S. at ____.

Chief Justice Roberts, in his concurring opinion, expanded on the considerations discussed in past cases, noting:

"Our cases indicate that courts conducting 'narrow proportionality' review should begin with a threshold inquiry that compares 'the gravity of the offense and the harshness of the penalty.' *Solem,* 463 U.S., at 290-291. This analysis can consider a particular offender's mental state and motive in committing the crime, the actual harm caused to his victim or to society by his conduct, and any prior criminal history. *Id.,* at 292-294, 296-297, and n.22, (considering motive, past criminal conduct, alcoholism, and propensity for violence of the particular defendant); see also *Ewing, supra,* at 28-30, (plurality opinion) (examining defendant's criminal history); *Harmelin,* 501 U.S., at 1001-1004, (opinion of KENNEDY, J.) (noting specific details of the particular crime of conviction)." *Graham,* 560 U.S. at ____ (Roberts, C.J., concurring).

These factors are case specific and inherently factual, and "[a]ppellate courts do not make factual findings but review those made by district courts." *State v. Thomas,* 288 Kan. 157, 161, 199 P.3d 1265 (2009). Consequently, we conclude Gomez' failure to raise these issues before the district court and obtain the necessary findings of fact precludes our review of the first, as-applied, classification discussed in *Graham,* 560 U.S. at ____. See *State v. Seward,* 289 Kan. 715, 721, 217 P.3d 443 (2009) ("[A] defendant who wishes to appeal on the basis of a constitutional challenge to a sentencing statute must ensure the findings and conclusions by the

district judge are sufficient to support appellate argument, by filing of a motion invoking the judge's duty under Rule 165 [2009 Kan. Ct. R. Annot. 239], if necessary.").

The second classification discussed in *Graham*, 560 U.S. at ___, was the categorical challenge that had historically been preserved for death penalty challenges. Despite the previously limited context in which the classification had been applied, the *Graham* majority applied the categorical analysis to a term-of-years challenge and concluded the Eighth Amendment does not permit a juvenile offender to be sentenced to life in prison without parole for a nonhomicide crime.

From the *Graham* Court's analysis it is not clear whether the Court would apply the categorical analysis in other contexts. Consequently, if we were to conduct a categorical analysis, the first question we would have to decide is whether the analysis would be extended to other categorical challenges. If we were to apply the categorical analysis, the *Graham* Court outlined the analytical framework that would apply. The Court explained there are two subsets of these cases, "one considering the nature of the offense, the other considering the characteristics of the offender." *Graham*, 560 U.S. at ___. The Court then explained:

"The Court first considers 'objective indicia of society's standards, as expressed in legislative enactments and state practice' to determine whether there is a national consensus against the sentencing practice at issue. [Citation omitted.] Next, guided by 'the standards elaborated by controlling precedents and by the Court's own understanding and interpretation of the Eighth Amendment's text, history, meaning, and purpose,' [citation omitted], the Court must determine in the exercise of its own independent judgment whether the punishment in question violates the Constitution. [Citation omitted.]" *Graham*, 560 U.S. at ___.

Explaining the application of these factors, the Court stated:

"Community consensus, while 'entitled to great weight,' is not itself determinative of whether a punishment is cruel and unusual. [Citation omitted.] In accordance with the constitutional design, 'the task of interpreting the Eighth Amendment remains our responsibility.' [Citation omitted.] The judicial exercise of independent judgment requires consideration of the culpability of the offenders at issue in light of their crimes and characteristics, along with the severity of the punishment in question. [Citations omitted.] In this inquiry the Court also con-

siders whether the challenged sentencing practice serves legitimate penological goals. [Citations omitted]." *Graham*, 560 U.S. at ___.

The *Graham* Court noted its past cases recognized retribution, deterrence, incapacitation, and rehabilitation as "legitimate" goals of penal sanctions. *Graham*, 560 U.S. at ___.

These factors are not case specific and generally raise questions of law. Given that consideration, the first *Pierce* exception—questions of law may be raised for the first time on appeal if determinative of a case—may apply. But two additional considerations arise regarding whether we can reach an Eighth Amendment categorical analysis. First, even though we recognize that Gomez' brief was filed before the *Graham* decision, Gomez has not filed a Rule 6.09(b) supplementation of authority to ask us to consider and apply *Graham*. See Supreme Court Rule 6.09 (2009 Kan. Ct. R. Annot. 47). Second, although Gomez cites to the Eighth Amendment in his appellate brief, he does not develop the argument and he does not cite any decisions of the United States Supreme Court in support of his passing reference to the Eighth Amendment. Rather, he focuses on Kansas cases and the analytical framework adopted in this court's decisions.

To preserve an issue for appellate review, a party must do more than incidentally raise the issue in an appellate brief. The party must present an argument and support that argument with pertinent authority or show why the argument is sound despite a lack of supporting authority or in the face of contrary authority. Otherwise, the argument will be deemed abandoned. See *State v. Conley*, 287 Kan. 696, 703, 197 P.3d 837 (2008) (failure to support point with pertinent authority or show why it is sound despite lack of supporting authority or in face of contrary authority is akin to failing to brief issue); *Cooke v. Gillespie*, 285 Kan. 748, 758, 176 P.3d 144 (2008) (point raised incidentally in brief and not argued there is deemed abandoned). We deem Gomez' argument under the Eighth Amendment to have been abandoned. Hence, we do not decide whether a categorical challenge could be brought under the circumstances of this case or whether, if allowed, such a challenge would be meritorious.

*Kansas Constitution*

We turn to Gomez' argument that his life sentence violates § 9 of the Kansas Constitution Bill of Rights because the sentence is disproportionate. As opposed to the decisions of the United States Supreme Court, the decisions of this court in applying § 9 of the Kansas Constitution Bill of Rights have consistently allowed a claim that a term-of-years sentence was disproportionate. In *McDaniel,* after noting the perceived retreat by the United States Supreme Court from its proportionality cases, this court concluded it would continue to apply the proportionality test established in *State v. Freeman,* 223 Kan. 362, 574 P.2d 950 (1978). 228 Kan. at 184-85.

In *Freeman,* this court recognized: "Punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." *Freeman,* 223 Kan. at 367. We set out a three-part test to aid in administering this principle, stating:

"(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

"(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." *Freeman,* 223 Kan. at 367.

In recent opinions, we have held that the *Freeman* factors include both legal and factual inquiries and that no single factor controls the outcome. *State v. Oehlert,* 290 Kan. 189, Syl. ¶ 3, 224 P.3d 561 (2010); *State v. Mondragon,* 289 Kan. 1158, 1163, 220 P.3d 369 (2009); *Seward,* 289 Kan. at 719; *State v. Easterling,* 289 Kan. 470, 486, 213 P.3d 418 (2009); *State v. Spotts,* 288 Kan. 650, 653, 206 P.3d 510 (2009); *Thomas,* 288 Kan. at 161; *Ortega-Cadelan,* 287 Kan. at 161. Because of the factual inquiries involved, we have concluded none of the *Pierce* exceptions applies and have

refused to consider an argument that a sentence is cruel and unusual for the first time on appeal, citing as reasons that the State has not been given the opportunity to develop a record on the issue and the district court had not made factual findings. See *Mondragon*, 290 Kan. 1158, Syl. ¶ 2; *Easterling*, 289 Kan. at 485-87; *Spotts*, 288 Kan. at 653-54; *Thomas*, 288 Kan. at 161; *Ortega-Cadelan*, 287 Kan. 157, Syl. ¶ 2.

In *Seward*, 289 Kan. 715, we did remand the case for further proceedings after finding that the defendant had sufficiently preserved the cruel or unusual punishment issue. The procedural history in *Seward* stands in sharp contrast to that in this case. Seward mentioned his cruel or unusual claim during plea negotiations, included it in his written downward departure motion, and reiterated the claim on the record at the sentencing hearing. In contrast, Gomez did not raise the constitutionality issue or develop the record below to allow this court to consider it. In this regard, Gomez is in the same position as the defendants in *Mondragon*, *Easterling*, *Spotts*, *Thomas*, and *Ortega-Cadelan*. Because Gomez made no effort before the district court to present the issue of whether a Jessica's Law sentence is cruel or unusual under § 9 of the Kansas Constitution Bill of Rights, the issue cannot be raised for the first time on appeal.

The judgment of the district court is affirmed.

DAVIS, C.J., not participating.

LARSON, S.J., assigned.