NOT DESIGNATED FOR PUBLICATION

No. 114,460

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

EVAN M. ALLEN,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; STEPHEN J. TERNES, judge. Opinion filed October 14, 2016. Sentence vacated in part and remanded with directions.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

Before MALONE, C.J., SCHROEDER, J., and WALKER, S.J.

*Per Curiam*: Evan M. Allen appeals his sentence of lifetime postrelease supervision for his conviction of aggravated sexual battery committed when he was a juvenile. He argues that lifetime postrelease supervision is categorically unconstitutional under the Eighth Amendment to the United States Constitution for juveniles convicted of a sex offense. Based on controlling precedent from the Kansas Supreme Court, we agree. Thus, we vacate the lifetime postrelease supervision portion of Allen's sentence for aggravated sexual battery and remand to the district court for resentencing.

1

The facts are straightforward and undisputed. On April 27, 2011, Allen pled no contest to one count of aggravated sexual battery, one count of sexual battery, two counts of lewd and lascivious behavior, and two counts of unlawful voluntary sexual relations. These charges were the result of Allen's conduct with multiple victims from June 2, 2008, through March 1, 2010. Allen was 15 years old when he committed aggravated sexual battery and he was between 15 and 17 years old when he committed the other crimes.

The district court held a sentencing hearing on July 15, 2011. The district court imposed a controlling sentence of 41 months' imprisonment with 24 months' postrelease supervision. Allen appealed his sentence, but our Supreme Court dismissed the appeal on April 19, 2013, finding it lacked jurisdiction to review Allen's presumptive sentence. See *State v. Allen*, No. 107,161, 2013 WL 1729118, *1 (Kan. 2013) (unpublished opinion).

On April 16, 2015, the State filed a motion to correct illegal sentence. The State argued that under K.S.A. 2015 Supp. 22-3717(d)(1)(G), Allen was required to receive lifetime postrelease supervision for his conviction of aggravated sexual battery rather than the 24-month term originally ordered by the district court. In response, Allen filed a motion for postrelease departure findings and argued that the imposition of lifetime postrelease supervision would be cruel and unusual punishment.

The district court held a hearing on the motion to correct illegal sentence on May 26, 2015. At the time of the hearing, Allen had been released from prison and was on postrelease supervision. Allen called a witness to testify about his activities since his release from prison, asked the court to consider his motion for probation filed at the original sentencing hearing, and asked the court to depart from a sentence of lifetime postrelease supervision. The State reasserted its arguments that Allen's original sentence was illegal and that lifetime postrelease supervision did not constitute cruel and unusual punishment because Allen had committed multiple offenses against multiple victims.

2

After hearing the evidence and arguments of counsel, the district court granted the State's motion to correct illegal sentence and imposed lifetime postrelease supervision. The district court found that K.S.A. 2015 Supp. 22-3717(d)(1)(G) did not allow for postrelease departure and, in any event, there were no substantial and compelling reasons to justify a departure. The district court also ruled that lifetime postrelease supervision was not unconstitutional as cruel and unusual punishment. Allen timely appealed.

The only claim Allen raises on appeal is that the district court erred when it granted the State's motion to correct illegal sentence and imposed lifetime postrelease supervision for his aggravated sexual battery conviction. Allen argues that pursuant to our Supreme Court's decision in *State v. Dull*, 302 Kan. 32, 351 P.3d 641 (2015), *cert. denied* 136 S. Ct. 1364 (2016), lifetime postrelease supervision imposed on juveniles convicted of a sex offense violates the Eighth Amendment to the United States Constitution. Allen also argues that lifetime postrelease supervision constitutes cruel and unusual punishment under § 9 of the Kansas Constitution Bill of Rights.

The State responds that *Dull* is not dispositive of this case because it does not apply to and should not be extended to a case such as Allen's where a juvenile has committed multiple acts of sexual violence with multiple victims. The State also argues that lifetime postrelease supervision does not violate § 9 of the Kansas Constitution Bill of Rights as applied to Allen because he failed to present factors that support such a finding and there are multiple factors that weigh against such a finding.

Whether a sentence is illegal within the meaning of K.S.A. 22-3504 is a question of law over which appellate courts have unlimited review. *State v. Taylor*, 299 Kan. 5, 8, 319 P.3d 1256 (2014). The constitutionality of a sentencing statute is also a question of law subject to unlimited review. *State v. Hilt*, 299 Kan. 176, 202, 322 P.3d 367 (2014).

3

*Issue Preservation*

We must first address whether Allen has properly preserved his constitutional claims for appeal. Allen's first claim is that lifetime postrelease supervision for juveniles violates the Eighth Amendment to the United States Constitution. There are two classifications of Eighth Amendment proportionality challenges: "(1) the length of term-of-years sentences given all the circumstances in a particular case; and (2) categorical restrictions on the death penalty." *Dull*, 302 Kan. at 38. This second classification also includes cases "in which the court implements the proportionality standard based on certain categorical restrictions." 302 Kan. at 38.

Allen's argument that the holding in *Dull* should be extended to his case is a categorical proportionality challenge under the second classification of Eighth Amendment challenges. See 302 Kan. at 39. Allen did not articulate a categorical proportionality challenge before the district court. However, our Supreme Court previously has considered categorical proportionality challenges raised for the first time on appeal. See *Dull*, 302 Kan. at 39; *State v. Williams*, 298 Kan. 1075, 1084-85, 319 P.3d 528 (2014). Thus, we will address Allen's Eighth Amendment challenge on appeal.

Allen's second claim is that lifetime postrelease supervision for juveniles constitutes cruel and unusual punishment under § 9 of the Kansas Constitution Bill of Rights. Resolution of a § 9 challenge requires an appellate court to apply the three-factor test provided in *State v. Freeman*, 223 Kan. 362, 574 P.2d 950 (1978). The *Freeman* factors contain legal and factual inquiries. *State v. Gomez*, 290 Kan. 858, 867, 235 P.3d 1203 (2010). These factual inquiries prevent a party from raising a § 9 challenge for the first time on appeal because the State will not have received an opportunity to develop a record on the issue and the district court will not have received an opportunity to make factual findings for appellate review. 290 Kan. at 867-68. Thus, a § 9 challenge must be raised before the district court to be preserved for appeal. *Dull*, 302 Kan. at 38-39.

4

Allen raised his § 9 challenge in his motion for postrelease departure findings and provided the *Freeman* factors in his motion. However, Allen's motion made only two arguments in support of his § 9 challenge. Allen's first argument was that "[t]he additional consequences imposed on defendant by now adding life time post release are done without any consideration of the defendant's particular offense or case." This argument is essentially a repeat of the first *Freeman* factor, which requires a court to consider the nature of the offense and the character of the offender. *Freeman*, 223 Kan. at 367. Allen's second argument was that "[t]he additional consequences imposed of now adding lifetime post release are so extensive and broad-sweeping that they are difficult to compare to other offenses within or without the jurisdiction."

In *State v. Thomas*, 288 Kan. 157, 199 P.3d 1265 (2009), the defendant stated in his motion for a departure that a sentence of life imprisonment without the possibility of parole for 25 years amounted to cruel and unusual punishment as applied to his case. However, the defendant did not address the *Freeman* factors, did not present any evidence, did not raise the issue at the hearing, and did not ask the district court to make findings of fact or conclusions of law on the issue. On appeal, our Supreme Court held that merely mentioning his § 9 challenge in his motion to depart was insufficient to preserve the issue for appellate review. 288 Kan. at 161; see also *State v. Garza*, 290 Kan. 1021, 1034, 236 P.3d 501 (2010) (merely raising § 9 challenge in departure motion was insufficient to preserve issue for appellate review).

As in *Thomas* and *Garza*, Allen failed to preserve his § 9 challenge for appellate review. While Allen provided the *Freeman* factors in his departure motion, he failed to make any argument as to how they applied to his case. Merely asserting a § 9 challenge and providing the *Freeman* factors, but not making any argument as to how the *Freeman* factors apply to the defendant's case, is insufficient to preserve the issue for appeal. Thus, we will not address Allen's challenge under § 9 of the Kansas Constitution Bill of Rights.

5

*Merits of Allen's Eighth Amendment Challenge*

Allen's Eighth Amendment argument focuses on the breadth of our Supreme Court's decision in *Dull*. Allen contends that *Dull*'s holding must apply to him because he was younger than Dull when he committed his offenses and his offenses were less severe than Dull's. The State contends that *Dull*'s holding is limited to juveniles who have been convicted of aggravated indecent liberties with a child and does not apply to Allen.

Allen's argument that he was younger than Dull and that his offenses were less severe than Dull's misses the point. The holding in *Dull* was that mandatory lifetime postrelease supervision was *categorically* unconstitutional. 302 Kan. at 61. This means that mandatory lifetime postrelease supervision is unconstitutional as applied to a certain category of offenders. See 302 Kan. at 44 (quoting *Williams*, 299 Kan. at 1086). Whether Allen's particular circumstances are sufficiently similar to the defendant's circumstances in *Dull* is not the appropriate inquiry. The appropriate inquiries are to what class of offenders does *Dull*'s holding apply and is Allen within that class of offenders. To answer these inquiries, a thorough examination of *Dull* is necessary.

Dull was convicted in one case of aggravated indecent liberties with a child, and he was convicted in a separate case of burglary and misdemeanor theft. Dull was 17 years old when he committed aggravated indecent liberties, but he was prosecuted as an adult. As a result, he received a statutorily required sentence of lifetime postrelease supervision for that conviction. Dull appealed his sentence and argued that lifetime postrelease supervision categorically constituted cruel and unusual punishment when applied to juveniles. The Court of Appeals held that lifetime postrelease supervision imposed on juveniles who were convicted of aggravated indecent liberties with a child did not constitute cruel and unusual punishment under the Eighth Amendment. 302 Kan. at 36. Our Supreme Court granted Dull's petition for review. 302 Kan. at 36.

To analyze Dull's claim, our Supreme Court applied the two-prong test set forth in *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010). 302 Kan. at 45. This required the court to first consider the "'"objective indicia of society's standards, as expressed in legislative enactments and state practice" to determine whether there [was] a national consensus against the sentencing practice at issue.'" 302 Kan. at 45 (quoting *Graham*, 560 U.S. at 61). "'Next, guided by "the standards elaborated by controlling precedents and by the Court's own understanding and interpretation of the Eighth Amendment's text, history, meaning, and purpose," [citation omitted], the Court must determine in the exercise of its own independent judgment whether the punishment in question violate[d] the Constitution.'" 302 Kan. at 45 (quoting *Graham*, 560 U.S. at 61).

First, the court noted that 18 states imposed mandatory lifetime postrelease supervision for some convicted sex offenders. 302 Kan. at 50. Kansas, Colorado, Nebraska, and Oklahoma mandated lifetime postrelease supervision of juveniles convicted of offenses comparable to aggravated indecent liberties with a child. 302 Kan. at 50. Arizona allowed for discretionary lifetime postrelease supervision in such circumstances. 302 Kan. at 50. However, Indiana, Montana, and Oregon prohibited mandatory lifetime postrelease supervision for juveniles. 302 Kan. at 50. Based on these findings, the court held that Dull had failed to show that there was a national consensus against imposing lifetime postrelease supervision on juveniles. 302 Kan. at 50.

Next, the court exercised its own independent judgment to determine whether imposing mandatory lifetime postrelease supervision on juveniles constituted cruel and unusual punishment. 302 Kan. at 51. This required the court to examine the culpability of juvenile offenders, the severity of mandatory lifetime postrelease supervision, and the legitimate penological goals served by lifetime postrelease supervision. 302 Kan. at 51; see also *State v. Mossman*, 294 Kan. 901, 929, 281 P.3d 153 (2012).

7

As to culpability, the court cited past statements from the United States Supreme Court and from its own decisions providing that juveniles have diminished culpability for their crimes because of their lack of maturity, underdeveloped sense of responsibility, vulnerability to negative influences and outside pressures, and the fact that their characters are not well formed. 302 Kan. at 51-52. Based on these statements, the court concluded that Dull had a diminished moral culpability for his crime because he committed the offense when he was 17 years old. 302 Kan. at 52.

Regarding the severity of the penalty, the court found that "mandatory lifetime postrelease supervision is a sentence that restricts the juvenile's liberty for life without any chance, hope, or legal mechanism of having those restrictions lifted or even reduced." 302 Kan. at 55. In support of this finding, the court noted that the restrictions imposed included:  reporting to a parole officer as directed; undergoing polygraph examinations at the request of the parole officer; registering and reporting to the local sheriff as directed; submitting to searches of the offender's residence, automobile, and personal effects; not traveling outside the state without permission; not drinking alcoholic beverages without permission; and not hunting with a firearm. 302 Kan. at 56.

Finally, the court addressed whether mandatory lifetime postrelease supervision for juveniles served legitimate penological goals. 302 Kan. at 56. After a review of U.S. Supreme Court cases, law review articles, and other state Supreme Court opinions, the court held that the penological purposes served by lifetime postrelease supervision for adults were not as applicable when they were applied to juvenile sex offenders. 302 Kan. at 57-60. Specifically, the court found that:  (1) retribution is a less compelling purpose because juveniles have less culpability for their crimes than adults; (2) deterrence is not served because juveniles do not have the ability to analyze their actions and the consequences of those actions and adjust their behavior accordingly; and (3) rehabilitation and incapacitation are not served because juveniles have a lower risk of recidivism than adults and placing lifetime restrictions on juvenile offenders "'forswears

8

altogether the rehabilitative ideal.'" 302 Kan. at 59-60. Based on all of these findings, the *Dull* court concluded "that mandatory lifetime postrelease supervision is categorically unconstitutional under *Graham* when imposed on a juvenile who committed and was later convicted of aggravated indecent liberties with a child." 302 Kan. at 61.

The State is correct that the holding in *Dull* only provides that mandatory lifetime postrelease supervision is categorically unconstitutional "when imposed on a juvenile who has committed and was later convicted of aggravated indecent liberties with a child." 302 Kan. at 61. However, when the opinion in *Dull* is viewed as a whole, it is clear that its ruling applies to all juveniles convicted of a sex offense, not just juveniles convicted of aggravated indecent liberties with a child.

While the holding of *Dull* is limited, the reasoning is not. Throughout the opinion the court discusses its reasoning in terms of all juveniles, not just juveniles convicted of aggravated indecent liberties with a child. When discussing the culpability of juvenile offenders, the court focused on the characteristics of all juveniles. 302 Kan. at 51-52. In its discussion of the severity of lifetime postrelease supervision, the court found that it restricted the juvenile's liberty for life. 302 Kan. at 56. Finally, the court noted that the legitimate penological goals served by lifetime postrelease supervision applied less to juvenile offenders because juveniles have reduced culpability for their crimes and a lower risk of recidivism. 302 Kan. at 57-61. None of the reasoning in *Dull* is applicable only to juveniles who were convicted of aggravated indecent liberties with a child. Rather, the reasoning applies to the characteristics of juveniles in general.

The State's argument that *Dull* should not be extended to apply to juveniles "convicted of crimes involving multiple victims, with multiple different acts of sexual violence, including acts involving sexual penetration" is not tenable for two reasons. First, drawing lines in such a case-specific manner is not permitted in a categorical proportionality challenge because creating such specific classifications of offenders

9

"'obliterate[s] the distinction'" between case-specific and categorical challenges. 302 Kan. at 44-45 (quoting *Mossman*, 294 Kan. at 928). Second, for the reasons discussed above, the opinion in *Dull* does not support such a narrow interpretation of its holding.

We conclude that under *Dull*, mandatory lifetime postrelease supervision is categorically unconstitutional for all juveniles convicted of a sex offense. As a result, the imposition of lifetime postrelease supervision on Allen constitutes cruel and unusual punishment under the Eighth Amendment of the United States Constitution. The lifetime postrelease supervision portion of Allen's sentence for aggravated sexual battery is therefore vacated and the case is remanded for resentencing. At resentencing, the district court cannot impose any term of postrelease supervision for Allen's conviction of aggravated sexual battery. See *Dull*, 302 Kan. at 61; *State v. Kessler*, 276 Kan. 202, 217, 73 P.3d 761 (2003) (where court's authority to impose sentence is controlled by statutory procedure found unconstitutional, court has no authority to impose such sentence).

Sentence vacated in part and remanded with directions.