NOT DESIGNATED FOR PUBLICATION

No. 123,161

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KENNETH EMMANUEL HOPKINS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; JEFFRY J. LARSON, judge. Opinion filed December 17, 2021. Affirmed.

*Jennifer Bates*, of Kansas Appellate Defender Office, for appellant.

*Laura L. Miser*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., ATCHESON and WARNER, JJ.

PER CURIAM: Kenneth Hopkins entered an *Alford* plea for the crime of attempted aggravated sexual battery. After mistakenly imposing 12 months' postrelease supervision, the district court corrected its error by ordering lifetime postrelease supervision. Hopkins challenges that order, arguing his postrelease term is disproportionate to his crime of conviction, violating the Kansas and United States Constitutions. While we appreciate the marked difference in these two supervision terms, our decision on this question is constrained by the precedent of our reviewing courts. We therefore affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

According to a police affidavit, in December 2017, 14-year-old H.N. attended a house party in Emporia, which Hopkins, then 18 years old, also attended. While there, H.N. consumed alcohol. She later explained that she could not remember what happened after she did so. Other attendees noted H.N. and Hopkins went into a bedroom together, and Hopkins later returned and intimated that he had sex with H.N. Later that evening, someone recorded Hopkins slapping H.N. across the face while she was passed out on a couch. At some point, H.N. received a copy of that video, and her friends told her what occurred. During a police interview, Hopkins stated he had sex with H.N., explaining that she initiated physical contact and that he knew she was drunk but did not know her age. He could not recall slapping H.N.

In March 2018, the State charged Hopkins with aggravated indecent liberties with a child. Following plea negotiations, Hopkins entered an *Alford* plea the next month to an amended charge of attempted aggravated sexual battery, a severity-level 7 felony. The district court found him guilty based on the facts contained in the police affidavit. At sentencing, the court found Hopkins had a criminal history score of D based on juvenile convictions for theft, a nonperson misdemeanor, and conspiracy to commit aggravated robbery, a person felony. It subsequently sentenced him to 24 months' probation, with an underlying 24-month prison term and 12 months' postrelease supervision. The court imposed multiple probation violation sanctions over the next several months before revoking Hopkins' probation in December 2019.

In July 2020, the Kansas Department of Corrections informed the court that Hopkins' conviction requires lifetime postrelease supervision. See K.S.A. 2020 Supp. 22-3717(d)(1)(G)(i). Before the hearing on his sentencing modification, Hopkins filed a motion arguing lifetime postrelease supervision would be disproportionate to his conviction, violating state and federal constitutional protections. His argument relied on

the facts in the police affidavit; he did not present or refer to any additional evidence. After reviewing the three factors from *State v. Freeman*, 223 Kan. 362, 574 P.2d 950 (1978), the court denied his motion and imposed lifetime postrelease supervision. The court explained H.N.'s age and unconsciousness made the crime particularly egregious, and though some more serious crimes have less severe consequences, the postrelease term was not unconstitutional.

## DISCUSSION

On appeal, Hopkins argues lifetime postrelease supervision is disproportionate to his underlying crime and violates the Eighth Amendment to the United States Constitution and section 9 of the Kansas Constitution Bill of Rights. After reviewing the underlying facts and comparing Hopkins' postrelease term to sentencing requirements used in Kansas and other states, we conclude that Hopkins' lifetime postrelease supervision term does not violate state or federal constitutional protections.

The Eighth Amendment to the United States Constitution and section 9 of the Kansas Constitution Bill of Rights prohibit cruel or unusual punishment. See U.S. Const. amend. VIII (prohibiting "cruel and unusual" punishment); Kan. Const. Bill of Rights, § 9 (prohibiting "cruel or unusual" punishment). Both aim to prevent punishments that are disproportionate to the underlying crime—the Eighth Amendment guards against grossly disproportionate punishments, while section 9 bars those that are so disproportionate that they "shock[] the conscience and offend[] fundamental notions of human dignity." *State v. Gomez*, 290 Kan. 858, Syl. ¶¶ 5, 9, 235 P.3d 1203 (2010).

Courts consider three factors—often called the *Freeman* factors after *Freeman*, 223 Kan. 362—to assess whether a punishment is disproportionate under section 9. *State v. Riffe*, 308 Kan. 103, Syl. ¶ 2, 418 P.3d 1278 (2018). These include:

"(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

"(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." *Freeman*, 223 Kan. at 367.

The Eighth Amendment entails a similar analysis, though it requires a preliminary determination of gross disproportionality under the first factor before addressing the others. *Gomez*, 290 Kan. 858, Syl. ¶¶ 5, 9. These factors require the district court to make factual and legal determinations. *State v. Mossman*, 294 Kan. 901, 906, 281 P.3d 153 (2012). Although no individual factor necessarily controls, one factor may be so weighty in a particular case that it dictates the outcome of the analysis. *State v. Funk*, 301 Kan. 925, 935, 349 P.3d 1230 (2015).

Appellate courts review a district court's factual findings for substantial competent evidence and its ultimate legal conclusions de novo. *Riffe*, 308 Kan. 103, Syl. ¶ 4. And because a challenge to the statute requiring lifetime postrelease supervision—K.S.A. 2020 Supp. 22-3717(d)(1)(G)(i)—is an indirect attack on the statute's constitutionality, appellate courts must presume the statute is constitutional. *Mossman*, 294 Kan. at 906-07.

Hopkins entered an *Alford* plea for attempted aggravated sexual battery, a sexually violent crime. K.S.A. 2020 Supp. 22-3717(d)(5)(I), (O). Individuals convicted of a sexually violent crime that they committed when they were at least 18 years old must serve a lifetime term of postrelease supervision after completing a prison term. K.S.A. 2020 Supp. 22-3717(d)(1)(G)(i). When under postrelease supervision, a prisoner review

4

board determines if a person has violated a postrelease condition and whether release should be revoked. K.S.A. 2020 Supp. 75-5217(b). Revocation based on the commission of a new felony or misdemeanor requires a term of imprisonment not to exceed the remaining postrelease period. K.S.A. 2020 Supp. 75-5217(c)-(d).

Hopkins argues the first two *Freeman* factors weigh in favor of disproportionality. Under the first factor, he notes that he was a teenager, the underlying conduct occurred at a party where teenagers were drinking, no evidence showed H.N. was injured, he has no prior convictions for sex crimes, and lifetime postrelease supervision will pose a significant burden to his reintegration into society. Under the second factor, he could face the prospect of up to life imprisonment for committing a severity level 7 felony—a situation that does not apply to many crimes with higher severity levels. And under the third factor, he acknowledges that other states have imposed similar lifetime postrelease periods for sex offenders.

Acknowledging that many other crimes have shorter postrelease periods, the State concedes that this consideration weighs in Hopkins' favor under the second and third factors. But it argues, under the first factor, that significant penological interests (such as deterrence) support imposing lifetime postrelease supervision. And under the second factor, crimes with shorter postrelease periods generally have greater underlying sentences. So Hopkins can undergo postrelease supervision in the community rather than serving a longer term in prison.

Factually, this case is similar to *Funk*. There, Cody Funk, then 18 or 19 years old, was in his friends' college apartment when his friends returned with 14-year-old H.D., though she told them she was 16 years old. Everyone drank and huffed from an aerosol can and encouraged H.D. to do so. At some point, someone recognized H.D. as being 14 years old, though it is unclear whether Funk knew this. H.D. performed oral sex on Funk before everyone left and attended another party. Funk was charged with criminal sodomy,

5

accepted a plea for attempted indecent solicitation of a child and placed on probation, but challenged his lifetime postrelease supervision requirement. Funk did not present additional evidence concerning his background; he simply relied on the facts contained in a probable-cause affidavit.

The Kansas Supreme Court found that lifetime postrelease supervision for Funk did not violate section 9. 301 Kan. at 942-43. The first factor did not weigh heavily in Funk's favor as he presented no evidence about his risk of recidivism or personal history that would undermine the deterrent justification of lifetime postrelease supervision as applied to individuals who commit sexual offenses. 301 Kan. at 938-39. In this way, the court distinguished Funk's case from instances where the defendant had offered significant personal evidence. See, e.g., *Mossman*, 294 Kan. at 911 (discussing evidence of psychological assessment that noted defendant's lack of criminal history, low recidivism score, acceptance of responsibility for criminal conduct, and appropriate level of remorse); *State v. Proctor*, No. 104,697, 2013 WL 6726286, at *5 (Kan. App. 2013) (unpublished opinion) (lifetime postrelease supervision unconstitutionally disproportionate as applied based in part on defendant's showing he was sexually abused himself and expert testimony indicating he would benefit from therapy and was not a likely future offender), *rev. denied* 299 Kan. 1273 (2014). Without any evidence of this type to consider, the court indicated it would "adhere to [its] previous observation that '[p]ostrelease supervision is largely designed to act as a deterrent to future crime, a goal that is particularly legitimate given sex offenders' higher rate of recidivism.'" *Funk*, 301 Kan. at 939 (quoting *Mossman*, 294 Kan. at 911).

The *Funk* court emphasized illegal sexual intercourse with a minor is a serious crime, diminishing the impact of the minor's role in initiating the conduct, and cited prior cases rejecting arguments that the minor had not been physically harmed. 301 Kan. at 939-40. The court also noted Funk encouraged H.D. to drink, leading to the illegal conduct, and was serving probation for burglary, which should have acted as a deterrent

6

for his illegal activity. 301 Kan. at 939-41. Additionally, Funk could not cite a more serious sex crime that is punished less severely under Kansas law. 301 Kan. at 941-42. And other states impose lifetime postrelease supervision on sex offenders. 301 Kan. at 942 (citing *Mossman*, 294 Kan. at 917-20). To the extent the first factor favored Funk, the court determined it was outweighed by the other factors. *Funk*, 301 Kan. at 942-43.

The Court of Appeals is duty-bound to follow Kansas Supreme Court precedent unless there is some indication that the Kansas Supreme Court is departing from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). Thus, *Funk* controls our analysis. As in *Funk*, Hopkins did not present any evidence of his character, risk of recidivism, or personal history, so only the underlying facts contained in the police affidavit guide this review. Those facts indicate Hopkins had sex with H.N. He knew she was intoxicated, and the district court determined that, based on her condition when Hopkins slapped her, H.N. was unconscious. See *State v. Robinson*, 306 Kan. 1012, 1023, 399 P.3d 194 (2017) (fact-finder may make reasonable inferences from the evidence). Though Hopkins stated H.N. initiated the physical contact, as in *Funk*, that does not weigh in his favor as minors are considered legally incapable of consenting to sexual conduct. *Funk*, 301 Kan. at 939-40. Likewise, the lack of physical harm to H.N. does not support Hopkins. 301 Kan. at 940. The State has a significant interest in deterring Hopkins' actions. He has a prior conviction for conspiracy to commit aggravated robbery, suggesting he may pose a risk of violence to society. And we cannot consider the potential consequence of serving postrelease in prison based on committing a new crime. 301 Kan. at 938.

We recognize that not all the evidence weighs against Hopkins' argument. Hopkins and H.N. were both young, though H.N. was significantly younger and a minor. No evidence showed that Hopkins encouraged H.N. to drink. Hopkins has no prior convictions for sex crimes. And the district court initially placed him on probation—an action another panel of our court has found is "difficult to meld with the harshest

component of lifetime postrelease supervision"—indicating Hopkins may not pose a threat to others. *Proctor*, 2013 WL 6726286, at *4. We also recognize the onerous requirements a person must meet when he or she is subject to postrelease supervision and are keenly aware of the myriad ways postrelease supervision alters a person's life. See *State v. Dull*, 302 Kan. 32, 53-55, 351 P.3d 641 (2015) (listing the requirements of postrelease supervision then in effect). We understand that even though he was only 18 years old when he committed his offense, "mandatory lifetime postrelease supervision is a sentence that restricts [Hopkins'] liberty for life without any chance, hope, or legal mechanism of having those restrictions lifted or even reduced." 302 Kan. at 55.

In the end, however, the absence of personal evidence about Hopkins' history, psychology, and likelihood of recidivism render this case and *Funk* indistinguishable. The only evidence presented regarding the first *Freeman* factor indicates that Hopkins took advantage of H.N., who was 14 years old, while she was intoxicated. The State has a significant interest in deterring such behavior, and Hopkins did not present any evidence that would undermine this interest or excuse or mitigate his conduct. See 301 Kan. at 938-39. Though certain considerations weigh in Hopkins' favor, they do not substantially outweigh the legislative prerogative for imposing lifetime postrelease supervision. See *State v. Ross*, 295 Kan. 424, 426-28, 284 P.3d 309 (2012) (noting conduct that was unambiguously sexual supported lifetime postrelease supervision under first *Freeman* factor).

Turning to the second *Freeman* factor, attempted aggravated sexual battery is a severity-level 7 felony. This is certainly less severe than other sexually violent crimes requiring lifetime postrelease supervision. See K.S.A. 2020 Supp. 21-5503(b)(1) (depending on subsection, rape ranges from an off-grid crime to severity-level 1 or 2 felony); K.S.A. 2020 Supp. 21-5506(c)(2) (aggravated indecent liberties with a child is a severity-level 3 or 4 felony); K.S.A. 2020 Supp. 21-5508(c)(1) (indecent solicitation of a child is a severity-level 6 felony); K.S.A. 2020 Supp. 22-3717(d)(5)(A), (C), (F). But the

8

Kansas Supreme Court explained in *Funk* that though all sexually violent offenses are subject to lifetime postrelease supervision, those offenses that are less egregious—like Hopkins' conviction for attempted aggravated sexual battery—carry shorter prison terms. See *Funk*, 301 Kan. at 941. And though nonsex crimes that carry longer prison terms may not mandate lifetime postrelease supervision, Hopkins has not pointed to any specific offense and punishment that renders his sentence grossly out of proportion, as demanded by our caselaw. See 301 Kan. at 942. Thus, the second *Freeman* factor does not weigh in Hopkins' favor.

Finally, the third factor favors the State. In *Mossman*, the Kansas Supreme Court reviewed postrelease practices in other states to conclude that Kansas' mandatory postrelease term does not constitute cruel and unusual punishment. See 294 Kan. at 919-20. As other states impose similar requirements for sex crimes committed against minors, this factor does not support Hopkins.

Weighing these factors, Hopkins' lifetime postrelease supervision is not disproportionate under the Kansas Constitution. The facts of the case and the State's interest in deterring future sex crimes outweighs those circumstances supporting Hopkins' argument. Though more severe crimes impose lesser postrelease terms, Hopkins will be able to serve his term outside of prison. And lifetime postrelease is not unique to Kansas. Because the three *Freeman* factors favor the State, Hopkins' lifetime postrelease term is not so disproportionate that it shocks the conscience.

Similarly, under the Eighth Amendment, Hopkins has not shown the facts of his case render his postrelease term grossly disproportionate to his offense. But even if he had made that initial showing, the other factors we have discussed render his sentence constitutional.

9

In *Funk*, the Kansas Supreme Court concluded that "lifetime postrelease supervision is not so disproportionate a punishment to an 18- or 19-year-old man's participation in a sex act with a 14-year-old girl that the punishment is shocking to the [conscience] or offensive to fundamental notions of human dignity." 301 Kan. at 943. Under this precedent, Hopkins' lifetime postrelease supervision does not violate section 9 of the Kansas Constitution Bill of Rights or the Eighth Amendment to the United States Constitution.

Affirmed.