No. 104,581

STATE OF KANSAS, *Appellee*, v. RAYMOND L. ROSS, III, *Appellant*.

(284 P.3d 309)

Opinion filed August 31, 2012.

*Meryl Carver-Allmond*, of Kansas Appellate Defender Office, was on the brief for appellant.

*Christina Trocheck*, assistant district attorney, *Ellen Mitchell*, district attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: Raymond L. Ross, III, appeals from the imposition of lifetime postrelease supervision following his plea of guilty to aggravated indecent liberties with a child. He contends that the lifetime postrelease supervision constitutes cruel and unusual punishment under § 9 of the Kansas Constitution Bill of Rights and the Eighth Amendment to the United States Constitution. We disagree and affirm his sentence.

According to an affidavit filed by a Salina Police Department investigator, a 4-year-old boy told his mother that Ross, who was 19 years old, had engaged in sodomy and oral sex with him in January 2010. The affidavit further alleged that Ross admitted to oral sexual acts with the boy, although Ross denied engaging in pederasty. Ross entered a plea of guilty to one count of aggravated indecent liberties with a child, K.S.A. 21-3504(a)(3)(A). Ross had an extensive criminal history, with 14 convictions spanning a time from 2001 to 2009, including both adult and juvenile person felonies and misdemeanor convictions. The charge carries with it a presumptive life sentence with a mandatory minimum term of 25 years with lifetime postrelease supervision. See K.S.A. 21-4643(a)(1)(C).

Ross argued in presentencing motions that departure from the presumptive sentence would be appropriate under his circumstances and that imposition of lifetime postrelease supervision would constitute cruel and unusual punishment under both the Kansas Constitution and United States Constitution. The court entered a departure sentence of 162 months, but imposed the statutorily mandated lifetime postrelease supervision term.

Ross appealed, reiterating his constitutional arguments.

The statutory scheme mandates lifetime postrelease supervision. K.S.A. 21-4643(a)(1)(C) provides for a term of life imprisonment for aggravated indecent liberties with a child, with a mandatory minimum term of 25 years. K.S.A. 2009 Supp. 22-3717(d)(1)(G) provides for lifetime postrelease supervision for persons convicted of sexually violent crimes. The statute defines aggravated indecent liberties with a child to be a sexually violent crime. K.S.A. 2009 Supp. 22-3717(d)(2)(C).

K.S.A. 2009 Supp. 75-5217(c) provides that after conviction of a new felony, "upon revocation, the inmate shall serve the entire remaining balance of the period of postrelease supervision even if the new conviction did not result in the imposition of a new term of imprisonment." K.S.A. 2009 Supp. 75-5217(d) makes a return to custody discretionary with the Kansas Parole Board upon conviction of a misdemeanor.

As a consequence of these statutes, Ross is subject to mandatory lifetime postrelease supervision upon the completion of his prison term, and he faces possible return to prison for life for committing any felony or misdemeanor while under postrelease supervision. Both the requirements of postrelease supervision and the threat of imposition of a life sentence upon conviction of a misdemeanor or felony drive Ross' argument that the statute is unconstitutional.

When determining whether a sentence is cruel or unusual under § 9 of the Kansas Constitution Bill of Rights, a district court must make both legal and factual determinations. On appeal, the appellate court applies a bifurcated standard of review: All of the evidence is reviewed, but not reweighed, to determine whether it is sufficient to support the district court's factual findings, but the legal conclusions that the district court draws from those facts are

reviewed de novo. *State v. Mossman*, 294 Kan. 901, Syl. ¶ 1, 281 P.3d 153 (2012).

A statute is presumed constitutional and all doubts must be resolved in favor of its validity. If there is any reasonable way to construe a statute as constitutionally valid, the court has the authority and the duty to do so. *State v. Laturner*, 289 Kan. 727, 735, 218 P.3d 23 (2009); see also *State ex rel. Six v. Kansas Lottery*, 286 Kan. 557, 562, 186 P.3d 183 (2008) ("It is not the duty of this court to criticize the legislature or to substitute its view on economic or social policy; it is the duty of this court to safeguard the constitution.").

This court has set out a three-part test governing analysis of cruel or unusual punishment claims under § 9 of the Kansas Constitution Bill of Rights:

"(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

"(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978).

The first prong of the *Freeman* test requires us to consider the nature of the offense and the character of the offender, with particular regard to the degree of danger he or she presents to society. Relevant factors are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment.

By the age of 19, Ross already had a category B criminal history. His prior convictions included multiple convictions for domestic battery and battery on a law enforcement officer. His current crime of conviction was committed against a 4-year-old boy, and the crime involved contact with the victim that was unambiguously sexual in nature.

A presentence psychological evaluation concluded: "Mr. Ross was finally able to acknowledge his version of abuse against the child victim. He has no insight into why he abused the child, though as is often observed in cases such as his, the victim's age is very close to the age when he himself had been abused. This pattern of re-enacting one's own abuse is a common pattern in the sex-offender population."

This court has held that a sentence of 18 years at hard labor for possession and sale of marijuana was not cruel and unusual punishment. *State v. Coutcher*, 198 Kan. 282, 424 P.2d 865 (1967). A sentence of a minimum of 80 years to life for four counts of criminal indecent liberties and three counts of aggravated criminal sodomy was not so oppressive that it constituted an abuse of discretion. *State v. Nunn*, 247 Kan. 576, 578-80, 802 P.2d 547 (1990). The theft of tobacco cutters valued at $6 could be punished by a confinement of 5 years at hard labor without violating constitutional restraints. *In re Tutt*, 55 Kan. 705, 41 P. 957 (1895).

We note that Ross received a departure, reducing his period of incarceration from life imprisonment with a mandatory minimum term of 25 years to incarceration for 162 months. Even though the terms of his postrelease supervision will expose him to the potential for reincarceration for life, postrelease supervision itself is less onerous than the presumptive life sentence. If the life sentence itself would not be cruel or unusual, then the lighter sentence of lifetime supervision would also not be cruel or unusual.

Sexual crimes committed against minors are particularly heinous and produce particularly devastating effects on the victims, including physical and psychological harm. Furthermore, sex offenders pose a high risk of recidivism. See *Mossman*, 2012 WL 3056041, at *7.

The evidence before the district court and before this court shows that Ross has a demonstrated history of violent crimes and that he has little understanding of the gravity of the crime at issue on appeal. His crime was committed against a very young and vulnerable victim. The record suggests that Ross constitutes a significant risk to society, that he will commit crimes of violence again. He can overcome this perception of danger by refraining from

criminal activity following his release, but neither the Kansas Constitution nor the United States Constitution require that he be afforded an opportunity to demonstrate his ability and willingness to comply with the law. As we noted in *Mossman*: "Postrelease supervision is largely designed to act as a deterrent to future crime, a goal that is particularly legitimate given sex offenders' higher rate of recidivism." *Mossman*, 2012 WL 3056041, at *7.

The district court considered Ross' psychological report, his probationary status from other offenses, and his criminal history, as well as the victim's age and the proclivity of sex offenders to reoffend. We conclude that the evidentiary record supports the district court's findings, and we also conclude that those findings weigh against a determination that lifetime postrelease supervision is cruel or unusual as it applies to Ross' circumstances.

This court has recently addressed the second and third *Freeman* factors as they relate to lifetime postrelease supervision. We have held that such a sentence is not constitutionally disproportionate to the sentences imposed for other, possibly "more serious," crimes in Kansas and is not disproportionate to the punishments imposed in other jurisdictions for similar offenses. *Mossman*, 2012 WL 3056041, at *13; *State v. Cameron*, 294 Kan. 884, Syl. ¶ 1, 281 P.3d 143 (2012). Ross does not produce new arguments inviting reconsideration of those holdings.

Ross also argues that lifetime postrelease supervision is unconstitutionally cruel and unusual under the Eighth Amendment to the United States Constitution.

An Eighth Amendment challenge to a term-of-years sentence as disproportionate and therefore cruel and unusual falls into two general classifications. The first classification involves arguments that the term of years is grossly disproportionate based on all the circumstances of a particular case. The second classification encompasses cases in which the court implements the proportionality standard based on certain categorical restrictions. *State v. Woodard*, 294 Kan. 717, Syl. ¶ 2, 280 P.3d 203 (2012).

When conducting an Eighth Amendment analysis to determine whether a sentence for a term of years is grossly disproportionate under the circumstances of a particular defendant's crime, a court

initially compares the gravity of the offense with the severity of the sentence. This analysis may consider the offender's mental state and motive in committing the crime, the actual harm caused to the victim or to society by the offender's conduct, any prior criminal history of the offender, and the offender's propensity for violence. In the rare case in which this threshold comparison leads to an inference of gross disproportionality, the court then compares the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. If this comparative analysis validates an initial judgment that the sentence is grossly disproportionate, the sentence is cruel and unusual. *Ewing v. California*, 538 U.S. 11, 22, 123 S. Ct. 1179, 155 L. Ed. 2d 108 (2003); *Woodard*, 294 Kan. at 721, 280 P.3d at 207.

The United States Supreme Court has held that the Eighth Amendment does not require strict proportionality between a crime and a sentence; rather, it forbids only extreme sentences that are grossly disproportionate to crime. *Ewing*, 538 U.S. at 20-21. A life sentence can be constitutional, even for a nonviolent property crime. See *Rummel v. Estelle*, 445 U.S. 263, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980) (upholding a life sentence with the possibility of parole, imposed under a Texas recidivist statute, for a defendant convicted of obtaining $120.75 by false pretenses, an offense normally punishable by imprisonment for 2 to 10 years); *Harmelin v. Michigan*, 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) (upholding a sentence of life without the possibility of parole for a defendant convicted of possessing more than 650 grams of cocaine, although it was his first felony offense).

Our analysis under the *Freeman* factors for the Kansas constitutional challenge applies with equal force to the first of the classifications for an Eighth Amendment challenge. Ross has a lengthy criminal history; he violated the personal integrity of a very young victim; and he showed little understanding of his actions. We conclude that Ross fails to sustain the threshold requirement of proving gross disproportionality under the Eighth Amendment to the United States Constitution.

We recently concluded that a sentence of lifetime postrelease supervision under K.S.A. 22-3717(d)(1)(G) for aggravated indecent liberties with a child is also not categorically disproportionate, even for first-time sex offenders, and is therefore not cruel and unusual under the Eighth Amendment. *Mossman*, 294 Kan. 901, Syl. ¶ 9; *Cameron*, 294 Kan. 884, Syl. ¶ 3. We find nothing in Ross' argument that would lead us to revisit that issue.

The sentence imposed by the district court is affirmed.