NOT DESIGNATED FOR PUBLICATION

No. 114,747

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRISTOPHER L. SADER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; JOSEPH L. MCCARVILLE III, judge. Opinion filed November 18, 2016. Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., GREEN, J., and WILLIAM S. WOOLLEY, District Judge, assigned.

*Per Curiam*:  Christopher L. Sader appeals from the district court's imposition of lifetime postrelease supervision for his convictions of indecent liberties with a child and failure to register as a sex offender. Sader argues the sentence is unconstitutionally cruel and/or unusual under § 9 of the Kansas Constitution Bill of Rights and the Eighth Amendment to the United States Constitution. Based on our review of the record in light of the factors set forth in *State v. Freeman*, 223 Kan. 362, 574 P.2d 950 (1978), and its progeny, we conclude that the district court's imposition of lifetime postrelease supervision on Sader did not constitute cruel and/or unusual punishment under either the Kansas or United States Constitutions. Thus, we affirm.

1

FACTS

The underlying facts are not in dispute. In 2003, Sader was adjudicated as a juvenile offender for attempted aggravated sexual battery. As a result of his adjudication, Sader was required to register as a sex offender. However, Sader failed to register with either the Kansas Bureau of Investigation or with the Reno County Sheriff.

In 2008, Sader—who was then 20 years old—was arrested for having sexual intercourse with a 15-year old girl. Prior to his arrest, Sader lied to police about his identity and attempted to flee police as they were attempting to place him into custody. He was initially charged with four counts of aggravated indecent liberties with a child and with three counts of failure to register as a sex offender. Ultimately, Sader entered into a plea agreement where he agreed to plead guilty to one count of indecent liberties with a child and one count of failure to register as a sex offender. In exchange, the State agreed to dismiss the remaining counts and to dismiss another criminal case that had been filed against him.

On August 14, 2009, the district court accepted Sader's plea and found him guilty on both charges. Subsequently, Sader moved for a downward departure, citing his low intellectual capacity, his acceptance of responsibility, and his personal history as a victim of abuse. After reviewing scientific articles provided by the parties and considering the arguments presented by counsel, the district court denied Sader's departure motion and sentenced him to concurrent sentences of 120 months in prison for indecent liberties with a child and 32 months in prison for failure to register as a sex offender. In addition, the district court imposed 24 months of postrelease supervision.

On April 16, 2015, the State filed a motion to correct illegal sentence. In particular, the State pointed out that the district court was required by K.S.A. 22-3717(d)(1)(G) and (d)(2)(B) to impose lifetime postrelease supervision in this case. On

2

May 22, 2015, the district court heard arguments on the motion. Although Sader challenged the constitutionality of this statutory requirement, the district court held that requiring him to undergo lifetime postrelease supervision does not violate either the Kansas Constitution or the United States Constitution. Accordingly, the district court corrected Sader's sentence and imposed the requirement of lifetime postrelease supervision.

ANALYSIS

The only issue presented on appeal is whether lifetime postrelease supervision—as applied to him—constitutes cruel and/or unusual punishment. Under Kansas law, a district court is mandated to impose lifetime postrelease supervision for a conviction of a "sexually violent crime," which includes indecent liberties with a child. See K.S.A. 22-3717(d)(1)(G), (d)(2)(B). The court's failure to comply with the lifetime postrelease statute results in an illegal sentence. See *State v. Baber*, 44 Kan. App. 2d 748, 753-54, 240 P.3d 980 (2010).

An illegal sentence can be corrected at any time. K.S.A. 22-3504(1). Here, the district court was required to correct Sader's sentence from 24 months' postrelease supervision to lifetime postrelease supervision, barring a successful claim that such a sentence constituted cruel and/or unusual punishment in his particular case. See *State v. Ballard*, 289 Kan. 1000, 1010-12, 218 P.3d 432 (2009).

*Section 9 of the Kansas Constitution Bill of Rights*

Section 9 of the Kansas Constitution Bill of Rights states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted." In *Freeman*, the Kansas Supreme Court interpreted § 9 of the Kansas Constitution Bill of Rights to prohibit punishment "so disproportionate to the crime for which it is inflicted

3

that it shocks the conscience and offends fundamental notions of human dignity. [Citations omitted.]" 223 Kan. at 367. The *Freeman* court established three factors to weigh when assessing proportionality challenges under § 9:

"(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

"(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." 223 Kan. at 367.

No one factor controls. *State v. Mossman*, 294 Kan. 901, 908, 281 P.3d 153 (2012). While one consideration "'may weigh so heavily that it directs the final conclusion,'" each part of the test should be given consideration. 294 Kan. at 908 (quoting *State v. Ortega-Cadelan*, 287 Kan. 157, 161, 194 P.3d 1195 [2008]). A challenge to the proportionality of a sentence is necessarily a factual inquiry. 294 Kan. at 908 (quoting *Ortega-Cadelan*, 287 Kan. at 161).

Determining whether a sentence constitutes cruel or unusual punishment under § 9 of the Kansas Constitution Bill of Rights requires a court to make legal and factual determinations. *State v. Funk*, 301 Kan. 925, 933, 349 P.3d 1230 (2015). When a case-specific cruel or unusual punishment decision is appealed, this court reviews the district court's factual findings for substantial competent evidence. 301 Kan. at 933. The district court's legal conclusions are reviewed de novo. 301 Kan. at 933.

4

*First* Freeman *Factor*

The first *Freeman* factor requires us to evaluate the nature of Sader's offense and his character. See *Freeman*, 223 Kan. at 367. Specifically, we must consider the degree of danger presented to society by Sader. See 223 Kan. at 367. This requires us to evaluate the facts of the case, whether Sader's crime was violent or nonviolent, the culpability for any injuries that occurred through his crime, and the penological purposes of his the punishment imposed. See 223 Kan. at 367.

This factor is "inherently factual, requiring examination of the facts of the crime and the particular characteristics of the defendant." *Ortega-Cadelan*, 287 Kan. at 161. The district court found adults have a duty to protect minors from their own poor decisions and that sexual crimes "[tend] to be things that people repeat because of the sexual nature of the motivation." Furthermore, the court found that taking advantage of the immaturity and lack of judgment of a child is somewhat egregious. We agree.

Sader argues that this factor weighs in his favor based on certain mitigating factors. First he notes his crime was nonviolent and thus not a serious crime. He also argues that there was only a 5-year difference between his age and the victim's age at the time of the offense. He notes his criminal history, while rated as a "B," is based on juvenile convictions, and he notes his relative youth at the time of the offense. Finally, he points to the abuse he suffered when he was younger, his diminished intellectual capacity, and his history of mental illness. The district court considered these factors but found that Sader took advantage of the victim's immaturity and that Sader was either unwilling to accept treatment or was untreatable.

The Kansas Supreme Court considered similar factors in *Mossman*, finding that an adult who comes into contact with a minor—even a seemingly mature minor—is expected to protect the child from the child's poor judgment. 294 Kan. at 910. Our

5

Supreme Court was unpersuaded by the other factors offered by *Mossman*, including a lack of a criminal history. 294 Kan. at 911. These factors "focus solely on proportionality from the perspective of punishment or retribution while ignoring legitimate penological goals . . . ." 294 Kan. at 911. As the *Mossman* court held, lifetime postrelease supervision serves multiple penological purposes—including retribution, deterrence, incapacitation, and rehabilitation. 294 Kan. at 911-12.

Here, lifetime postrelease supervision will help ensure Sader does not reoffend when he is released from prison by requiring that he maintain contact with his supervising officer. Lifetime postrelease supervision also supports rehabilitation by providing Sader with the opportunity to successfully reenter society as long as he complies with the conditions of his release. Finally, lifetime postrelease supervision serves as punishment and retribution for Sader's conduct in engaging in illegal sexual intercourse with a minor.

Accordingly, we find that there was substantial competent evidence to support the district court's findings under the first *Freeman* factor. Based on the serious nature of Sader's crime, his unwillingness to seek treatment, the strong likelihood of recidivism based on his prior sexual offense and the nature of the crime, his character—that he lied to and attempted to escape from police, and the penological purposes served by lifetime postrelease supervision, we conclude that the first *Freeman* factor weighs in favor of imposition of lifetime postrelease supervision in Sader's case.

*Second* Freeman *Factor*

The second *Freeman* factor requires us to compare Sader's punishment with the punishment imposed in this state for more serious crimes. See *Freeman*, 223 Kan. at 367. Sader argues that this factor weighs in his favor because sentences for second-degree murder and other crimes do not include a requirement of lifetime postrelease supervision.

6

Thus, according to Sader, a defendant convicted of any of these offenses would eventually complete his or her sentence while Sader will never receive a release from supervision.

We reject the contention that the crimes listed by Sader are "more serious" than indecent liberties with a child—a severity level 5 crime. In *Funk*, the Kansas Supreme Court determined that, when comparing the sentences for different crimes in Kansas, appellate courts should only consider whether Kansas punishes a more serious sex crime less seriously. 301 Kan. at 941-42. Only two of the crimes Sader points to are sex crimes, and only one, electronic solicitation of a child "the offender believes to be under 14 years of age," has a higher severity level and is subject to only 36 months of postrelease supervision. See K.S.A. 21-3523(a)(2), (b); K.S.A. 22-3717(d)(1)(A), (D).

Our Supreme Court has rejected attempts under the second *Freeman* factor to focus on the length of postrelease supervision and instead has looked to the total length of the sentence, including actual incarceration. *Mossman*, 294 Kan. at 912-13; *State v. Cameron*, 294 Kan. 884, 893, 281 P.3d 143 (2012). As stated in *Mossman*, "while [the] overall sentence [of lifetime postrelease supervision] may be longer than someone convicted of second-degree murder [with 36 months of postrelease supervision], Mossman has the opportunity to serve most of that time in a less restrictive environment." 294 Kan. at 913. Additionally, in *Cameron*, our Supreme Court explicitly compared a sentence for a sexually violent crime—including lifetime postrelease supervision—to the sentence for second-degree murder, including the 36-month postrelease supervision term, and stated:

> "[W]hile a defendant subject to lifetime postrelease supervision is under a longer cumulative sentence than a defendant sentenced for second-degree murder, a 'sentence to lifetime postrelease supervision [for a sexually violent offense] is not grossly disproportionate in relation to the sentence applicable to second-degree murder in Kansas when we consider the penological purposes, the seriousness of the crime, and the other

concerns discussed in relation to the first *Freeman* factor.' [Citation omitted.]" 294 Kan. at 893.

Electronic solicitation carries, without a downward durational or dispositional departure, a minimum sentence of 206 months of prison time, nearly twice as long as Sader's 120 months of prison time. See K.S.A. 21-4704(a). Electronic surveillance is therefore punished more severely, as Sader has the opportunity to serve the majority of his sentence in a less restrictive manner.

It is important to note that the Kansas Supreme Court has previously rejected attempts to focus on the potential consequences of violating lifetime postrelease supervision in the future, finding that such consequences are a separate issue from the question of disproportionality. See *Mossman*, 294 Kan. at 914-17. Thus, we reject any argument Sader raises about potential violations of supervision.

Based on the analysis in *Mossman* and *Cameron*, we conclude that the imposition of lifetime postrelease supervision for the crime of indecent liberties with a child is not grossly disproportionate to the sentence imposed for other offenses in Kansas. Accordingly, the second *Freeman* factor does not weigh in Sader's favor.

*Third* Freeman *Factor*

The third *Freeman* factor requires this court to compare Sader's punishment with the punishment that other states impose for the same offense. See *Freeman*, 223 Kan. at 367. Sader argues that this factor weighs in favor of finding his sentence unconstitutional because Kansas' mandatory imposition of lifetime postrelease supervision for a conviction of a sex offense is severe, and he asserts that there is a "national consensus against mandatory lifetime postrelease supervision without the possibility of release or

8

discharge for this class of offenses." He points to the fact that many other states allow offenders to be released from postrelease supervision upon meeting certain criteria.

In *Mossman*, the Kansas Supreme Court addressed a similar argument. In doing so, it found:

> "[L]ess than half of states provide for lifetime postrelease supervision of some or all sex offenders and, because several states have a mechanism for termination of the postrelease supervision under certain conditions, only a handful of states impose punishment as absolute as Kansas' requirement. Nevertheless, Kansas is not alone in imposing mandatory lifetime postrelease supervision for crimes such as [aggravated indecent liberties with a child], and we are not aware of any court that has found lifetime postrelease supervision of a violent sex offender to be cruel and unusual punishment." *Mossman*, 294 Kan. at 920.

The same rationale was used in *Cameron*, 294 Kan. at 894-95, and in *Funk*, 301 Kan. at 942. In the present case, Sader does not offer any new arguments to invite reconsideration. As such, there is no need to reevaluate this factor. See *State v. Ross*, 295 Kan. 424, 428, 284 P.3d 309 (2012).

Finally, Sader argues he should get relief on this factor based on the rule in *State v. Dull*, 302 Kan. 32, 351 P. 3d 641 (2015), *cert denied* 136 S. Ct. 1364 (2016). In that case, Dull, who was 17 at the time of the crime, was convicted of aggravated indecent liberties with a child. The *Dull* court held imposing mandatory lifetime postrelease supervision on an individual who was a juvenile at the time of the offense was unconstitutional. 302 Kan. at 61. This case, however, is distinguishable as Sader was an adult, aged 20, at the time of his offense. Thus *Dull* is inapplicable to Sader's case and offers no relief. Therefore, we conclude that the third *Freeman* factor does not weigh in Sader's favor.

*Eighth Amendment Claim*

Sader's brief argues in passing that imposing lifetime postrelease supervision on him also violates the Eighth Amendment to the United States Constitution. However, he provides no separate analysis for his Eighth Amendment challenge. Generally, a point merely raised incidentally in a brief is deemed abandoned. *State v. Llamas*, 298 Kan. 246, 264, 311 P.3d 399 (2013). Nevertheless, we will briefly address whether Sader is entitled to relief under the Eighth Amendment.

The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The United States Supreme Court has found that "[t]he concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'" *Graham v. Florida*, 560 U.S. 48, 59, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010).

In *State v. Gomez*, 290 Kan. 858, Syl. ¶ 5, 235 P.3d 1203 (2010), the Kansas Supreme Court looked to the United States Supreme Court's decision in *Graham* in laying the framework for analyzing Eighth Amendment cruel and unusual punishment challenges and stated:

> "In conducting an Eighth Amendment analysis to determine whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime, a court must begin by comparing the gravity of the offense and the severity of the sentence. This analysis can consider a particular offender's mental state and motive in committing the crime, the actual harm caused to the victim or to society by the offender's conduct, any prior criminal history, and a particular offender's propensity for violence. In the rare case in which this threshold comparison leads to an inference of gross disproportionality, the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in

10

other jurisdictions. If this comparative analysis validates an initial judgment that the sentence is grossly disproportionate, the sentence is cruel and unusual."

For the reasons we have previously stated, the first *Freeman* factor weighs in favor of imposition of lifetime postrelease supervision in this case. Furthermore, in comparing the gravity of Sader's offense with the severity of the sentence does not result in an inference of gross disproportionality. Because Sader fails to satisfy the threshold test for determining whether a sentence is cruel and unusual punishment, further consideration of his case-specific Eighth Amendment claim is unnecessary.

*Summary*

In summary, after considering each of the *Freeman* factors, we find that the district court's imposition of lifetime postrelease supervision was not so disproportionate to Sader's conviction that "it shocks the conscience and offends fundamental notions of human dignity." See *Freeman*, 223 Kan. at 367. Accordingly, we conclude that Sader's sentence to lifetime postrelease supervision does not constitute cruel or unusual punishment in violation of § 9 of the Kansas Constitution Bill of Rights. Likewise, we conclude that Sader's sentence of lifetime postrelease supervision does not violate the Eighth Amendment's prohibition against cruel and unusual punishment. We, therefore, affirm Sader's sentence.

Affirmed.

11