NOT DESIGNATED FOR PUBLICATION

No. 115,163

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RICHARD BENJAMIN VELOS GARCIA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Nemaha District Court; JAMES A. PATTON, judge. Opinion filed November 18, 2016. Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Brad M. Lippert*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., GREEN, J., and WILLIAM S. WOOLLEY, District Judge, assigned.

*Per Curiam*:  Richard Benjamin Velos Garcia appeals the district court's imposition of lifetime postrelease supervision for his conviction of rape of a child under the age of 14. Garcia argues that lifetime postrelease supervision constitutes cruel and/or unusual punishment in violation of § 9 of the Kansas Constitution Bill of Rights and the Eighth Amendment to the United States Constitution. Based on our review of the record in light of the factors set forth in *State v. Freeman*, 223 Kan. 362, 574 P.2d 950 (1978), and its progeny, we conclude that the district court's imposition of lifetime postrelease supervision on Garcia did not constitute cruel and/or unusual punishment under either the Kansas or United States Constitutions. Thus, we affirm.

1

FACTS

The underlying facts are not in dispute. In 2008, Garcia pled no contest to raping a child under the age of 14. Specifically, the State alleged that Garcia had sexual contact—including sexual intercourse—with his 5-year old niece. In exchange for his plea to the rape charge, the State agreed to dismiss an aggravated indecent liberties charge against Garcia.

The district court accepted Garcia's plea and found him guilty on the rape charge. Subsequently, Garcia filed a motion for downward departure, which was granted by the district court. Ultimately, he was sentenced to 120 months of prison time, with 36 months of postrelease supervision.

On October 29, 2015, a hearing was held to determine whether Garcia should be sentenced to mandatory lifetime postrelease supervision. At the hearing, Garcia challenged the constitutionality of the statutory requirement. However, the district court determined that requiring Garcia to undergo lifetime postrelease supervision does not violate either the Kansas Constitution or the United States Constitution. Accordingly, the district court corrected Garcia's sentence and imposed the requirement of lifetime postrelease supervision.

ANALYSIS

The only issue presented on appeal is whether lifetime postrelease supervision—as applied to him—constitutes cruel and/or unusual punishment. Under Kansas law, a district court is mandated to impose lifetime postrelease supervision for a conviction of a "sexually violent crime." See K.S.A. 22-3717(d)(1)(G), (d)(2)(A). A district court's failure to comply with the lifetime postrelease statute results in an illegal sentence. See *State v. Baber*, 44 Kan. App. 2d 748, 753-54, 240 P.3d 980 (2010).

2

An illegal sentence can be corrected at any time. K.S.A. 22-3504(1). Here, the district court was required to correct Garcia's sentence from 36 months' postrelease supervision to lifetime postrelease supervision, barring a successful claim that such a sentence constituted cruel and/or unusual punishment in his particular case. See *State v. Ballard*, 289 Kan. 1000, 1010-12, 218 P.3d 432 (2009).

*Section 9 of the Kansas Constitution Bill of Rights*

Section 9 of the Kansas Constitution Bill of Rights states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted." In *Freeman*, the Kansas Supreme Court interpreted § 9 of the Kansas Constitution Bill of Rights to prohibit punishment "so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity. [Citations omitted.]" 223 Kan. at 367. The *Freeman* court established three factors to weigh when assessing proportionality challenges under § 9:

"(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

"(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." 223 Kan. at 367.

No one factor controls. *State v. Mossman*, 294 Kan. 901, 908, 281 P.3d 153 (2012). While one consideration "'may weigh so heavily that it directs the final conclusion,'" each part of the test should be given consideration. 294 Kan. at 908 (quoting *State v. Ortega-Cadelan*, 287 Kan. 157, 161, 194 P.3d 1195 [2008]). A challenge to the proportionality of a sentence is necessarily a factual inquiry. 294 Kan. at 908 (quoting *Ortega-Cadelan*, 287 Kan. at 161).

Determining whether a sentence constitutes cruel or unusual punishment under § 9 of the Kansas Constitution Bill of Rights requires a court to make legal and factual determinations. *State v. Funk*, 301 Kan. 925, 933, 349 P.3d 1230 (2015). When a case-specific cruel or unusual punishment decision is appealed, this court reviews the district court's factual findings for substantial competent evidence. 301 Kan. at 933. The district court's legal conclusions are reviewed de novo. 301 Kan. at 933.

*First* Freeman *Factor*

The first *Freeman* factor requires us to evaluate the nature of Garcia's offense and his character. See *Freeman*, 223 Kan. at 367. Specifically, we must consider the degree of danger presented to society by Garcia. See 223 Kan. at 367. This requires us to evaluate the facts of the case, whether Garcia's crime was violent or nonviolent, the culpability for any injuries that occurred through his crime, and the penological purposes of his punishment imposed. See 223 Kan. at 367.

This factor is "inherentl factual, requiring examination of the facts of the crime and the particular characteristics of the defendant." *Ortega-Cadelan*, 287 Kan. at 161. The district court found rape of a child under the age of 14 poses a great danger to society and is "highly significant to the level of punishment and control necessary for anyone being convicted of that offense." The district court further found there is a significant

"penological" purpose of a significant penalty for rape, and the court noted the offense is of the highest severity level. We agree.

Garcia argues that this factor weighs in his favor because there was only one victim, he cooperated with law enforcement officers, and he expressed remorse over his actions. He also argues the fact that the district court granted him a downward departure demonstrates that the nature of his crime and his character make the imposition of lifetime postrelease supervision cruel and/or unusual. In support of his argument, Garcia cites *State v. Proctor*, 47 Kan. App. 2d 889, Syl., 280 P.3d 839 (2012), in which a panel of this court held that imposing lifetime postrelease supervision on a defendant for aggravated indecent solicitation of a child would be constitutionally improper due to his age and his negligible criminal history. 47 Kan. App. 2d. at 937-38; see *State v. Proctor*, No. 104,697, 2013 WL 6726286 (Kan. App. 2013) (unpublished opinion).

While the defendant in *Proctor* was 19 years old and the victim was 12 years old, Garcia was 26 years old and the victim was his 5-year-old niece. In other words, while the defendant was 7 years older than the victim in the *Proctor* case, Garcia was 21 years older than the victim in this case. Furthermore, while the defendant in *Proctor* was convicted of aggravated indecent solicitation of a child—a severity level 5 person felony—and two counts of lewd and lascivious behavior—severity level 9 person felonies, Garcia was convicted of raping his young niece—a severity level 1 person felony. Moreover, as the State points out, Proctor received probation while Garcia received a significant prison sentence.

As emphasized by the Kansas Supreme Court in *State v. Mossman*, 294 Kan. 901, 281 P.3d 153 (2012), lifetime postrelease supervision serves multiple penological purposes—including retribution, deterrence, incapacitation, and rehabilitation. 294 Kan. at 911-12. These considerations are relevant in this case because lifetime postrelease supervision will help to ensure that Garcia does not reoffend when he is released from

5

prison by requiring that he maintain contact with his supervising officer. Lifetime postrelease supervision also supports rehabilitation by providing Garcia with the opportunity to successfully reenter society as long as he is complies with the conditions of his release. Finally, lifetime postrelease supervision serves as punishment and retribution for Garcia's conduct in raping his young niece.

Accordingly, we find that there was substantial competent evidence to support the district court's findings under the first *Freeman* factor. Based on the serious nature of Garcia's crime, the devastating emotional and psychological injuries he inflicted on his 5-year-old niece, his character—including the possibility that he may reoffend in the future, and the penological purposes served by lifetime postrelease supervision, we conclude that the first *Freeman* factor weighs in favor of imposition of lifetime postrelease supervision in Garcia's case.

### *Second* Freeman *Factor*

The second *Freeman* factor requires us to compare Garcia's punishment with the punishment imposed in this state for more serious crimes. See *Freeman*, 223 Kan. at 367. Garcia argues that this factor weighs in his favor because sentences for second-degree murder and other serious crimes do not include a requirement of lifetime postrelease supervision. Thus, according to Garcia, a defendant convicted of any of these offenses would eventually complete his or her sentence while Garcia will never receive a release from supervision.

We reject the contention that the crimes listed by Garcia are "more serious" than raping a child—a severity level 1 crime. In fact, most of the crimes listed by Garcia in his brief as being more serious crimes are also severity level 1 offenses. Accordingly, the crime of raping a child is just as serious a crime as intentional second-degree murder, aggravated kidnapping, aggravated trafficking, and terrorism.

6

It is important to note that the Kansas Supreme Court has previously rejected attempts to focus on the potential consequences of violating lifetime postrelease supervision in the future, finding that such consequences are a separate issue from the question of disproportionality. See *Mossman*, 294 Kan. at 914-17. Moreover, our Supreme Court has rejected attempts under the second *Freeman* factor to focus on the length of postrelease supervision and instead has looked to the total length of the sentence, including actual incarceration. *Mossman*, 294 Kan. at 912-13; *State v. Cameron*, 294 Kan. 884, 893, 281 P.3d 143 (2012). For example, in *Cameron*, our Supreme Court explicitly compared a sentence for a sexually violent crime—including lifetime postrelease supervision—to the sentence for second-degree murder, including the 36-month postrelease supervision term, and stated:

> "[W]hile a defendant subject to lifetime postrelease supervision is under a longer cumulative sentence than a defendant sentenced for second-degree murder, a 'sentence to lifetime postrelease supervision [for a sexually violent offense] is not grossly disproportionate in relation to the sentence applicable to second-degree murder in Kansas when we consider the penological purposes, the seriousness of the crime, and the other concerns discussed in relation to the first *Freeman* factor.' [Citation omitted.]" 294 Kan. at 893.

Based on the analysis in *Mossman* and *Cameron*, we conclude that the imposition of lifetime postrelease supervision for the crime of rape of a child under 14 years of age is not grossly disproportionate to the sentence imposed for other offenses in Kansas. Accordingly, the second *Freeman* factor does not weigh in Garcia's favor.

### *Third* Freeman *Factor*

The third *Freeman* factor requires this court to compare Garcia's punishment with the punishment that other states impose for the same offense. See *Freeman*, 223 Kan. at 367. Garcia argues that this factor weighs in favor of finding his sentence

7

unconstitutional because Kansas' mandatory imposition of lifetime postrelease supervision for a conviction of a sex offense "is the harshest and most severe in the country." He points to the fact that "many other states" allow offenders to be released from postrelease supervision upon meeting certain criteria.

In *Mossman*, the Kansas Supreme Court addressed a similar argument. In doing so, it found:

> "[L]ess than half of states provide for lifetime postrelease supervision of some or all sex offenders and, because several states have a mechanism for termination of the postrelease supervision under certain conditions, only a handful of states impose punishment as absolute as Kansas' requirement. Nevertheless, Kansas is not alone in imposing mandatory lifetime postrelease supervision for crimes such as [aggravated indecent liberties with a child], and we are not aware of any court that has found lifetime postrelease supervision of a violent sex offender to be cruel and unusual punishment." *Mossman*, 294 Kan. at 920.

The same rationale was used in *Cameron*, 294 Kan. at 894-95, and in *Funk*, 301 Kan. at 942. In the present case, Garcia does not offer any new arguments to invite reconsideration. As such, there is no need to reevaluate this factor. See *State v. Ross*, 295 Kan. 424, 428, 284 P.3d 309 (2012). Thus, we conclude that the third *Freeman* factor does not weigh in Garcia's favor.

*Eighth Amendment Claim*

Garcia's brief argues in passing that imposing lifetime postrelease supervision on him also violates the Eighth Amendment to the United States Constitution. However, he provides no separate analysis for his Eighth Amendment challenge. Generally, a point merely raised incidentally in a brief is deemed abandoned. *State v. Llamas*, 298 Kan. 246, 264, 311 P.3d 399 (2013). Nevertheless, we will briefly address whether Garcia is entitled to relief under the Eighth Amendment.

The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The United States Supreme Court has found that "[t]he concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'" *Graham v. Florida*, 560 U.S. 48, 59, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010).

In *State v. Gomez*, 290 Kan. 858, Syl. ¶ 5, 235 P.3d 1203 (2010), the Kansas Supreme Court looked to the United States Supreme Court's decision in *Graham* in laying the framework for analyzing Eighth Amendment cruel and unusual punishment challenges and stated:

> "In conducting an Eighth Amendment analysis to determine whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime, a court must begin by comparing the gravity of the offense and the severity of the sentence. This analysis can consider a particular offender's mental state and motive in committing the crime, the actual harm caused to the victim or to society by the offender's conduct, any prior criminal history, and a particular offender's propensity for violence. In the rare case in which this threshold comparison leads to an inference of gross disproportionality, the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. If this comparative analysis validates an initial judgment that the sentence is grossly disproportionate, the sentence is cruel and unusual."

For the reasons we have previously stated, the first *Freeman* factor weighs in favor of imposition of lifetime postrelease supervision in this case. Furthermore, in comparing the gravity of Garcia's offense with the severity of the sentence does not result in an inference of gross disproportionality. Because Garcia fails to satisfy the threshold test for determining whether a sentence is cruel and unusual punishment, further consideration of his case-specific Eighth Amendment claim is unnecessary.

*Summary*

In summary, after considering each of the *Freeman* factors, we find that the district court's imposition of lifetime postrelease supervision was not so disproportionate to Garcia's conviction that "it shocks the conscience and offends fundamental notions of human dignity." See *Freeman*, 223 Kan. at 367. Accordingly, we conclude that Garcia's sentence to lifetime postrelease supervision does not constitute cruel or unusual punishment in violation of § 9 of the Kansas Constitution Bill of Rights. Likewise, we conclude that Garcia's sentence of lifetime postrelease supervision does not violate the Eighth Amendment's prohibition against cruel and unusual punishment. We, therefore, affirm Garcia's sentence.

Affirmed.