NOT DESIGNATED FOR PUBLICATION

No. 124,090

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMES E. HANSEN JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GERALD R. KUCKELMAN, judge. Opinion filed May 13, 2022. Affirmed in part and vacated in part.

*Jennifer C. Bates*, of Kansas Appellate Defender Office, for appellant.

*Jose V. Guerra*, assistant county attorney, *Todd Thompson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., GREEN, J., and RICHARD B. WALKER, S.J.

PER CURIAM: After pleading guilty to aggravated indecent liberties with a child, the trial court sentenced James E. Hansen Jr. to an off-grid hard 25 term of life imprisonment followed by lifetime postrelease supervision. Hansen appeals his sentence, arguing (1) that the trial court erred when it denied his departure motion and (2) that the trial court erred when it sentenced him to lifetime postrelease supervision. Although the trial court properly denied Hansen's departure motion, it should have sentenced Hansen to life imprisonment followed by lifetime *parole*. Thus, we affirm the trial court's denial of

1

Hansen's departure motion but vacate the part of Hansen's sentence imposing lifetime postrelease supervision.

BACKGROUND

The facts of this case are undisputed. In June 2020, Hansen's relative, R.F., alleged that Hansen touched his penis through his clothing a year or so earlier when he was under 14 years old. In October 2020, Detective Heather Mowery interviewed Hansen about R.F.'s sexual abuse allegation. During that interview, Hansen admitted that he had previously "manipulated" R.F.'s penis through R.F.'s clothing until R.F. had an erection. He told Detective Mowery that the incident happened in his bedroom as R.F. played on his computer. And Hansen told Detective Mowery that he stopped touching R.F.'s penis when R.F. told him to stop.

Following this admission, the State charged Hansen with one count of aggravated indecent liberties with a child, an off-grid person felony in violation of K.S.A. 2020 Supp. 21-5506(b)(3)(A) and (c)(3). Eventually, Hansen entered into a plea agreement with the State under which he agreed to plead guilty as charged to aggravated indecent liberties with a child. Under his plea agreement, Hansen could also move for a durational departure at sentencing. In exchange for his guilty plea, the State agreed that it would not charge Hansen for any other sex crimes discovered while investigating R.F.'s sexual abuse allegation. During his interview with Detective Mowery, Hansen admitted that he touched other relatives—R.F.'s five siblings—in a sexual manner when they were minors.

After pleading guilty to aggravated indecent liberties with a child in accordance his plea agreement, Hansen moved for a durational departure under K.S.A. 2020 Supp. 21-6627(d). In his motion, Hansen recognized that his crime was classified as an off-grid felony carrying a life sentence with a mandatory 25 years' imprisonment before the possibility of parole under K.S.A. 2020 Supp. 21-6627(a)(1). Yet, he argued that the trial

court should depart from this sentence because there were substantial and compelling reasons under K.S.A. 2020 Supp. 21-6627(d)(2) to sentence him as if he had committed a severity level 3 person crime under the revised Kansas Sentencing Guidelines Act (KSGA) grid; such a sentence would require Hansen to serve 61, 66, or 71 months' imprisonment before his release based on his criminal history score of H.

In his motion, Hansen argued that he was less likely to reoffend in the future, and thus posed a lower safety risk to others, for several reasons: (1) because his criminal history consisted of two nonviolent misdemeanors, (2) because he intended to complete the sex offender treatment program while in prison, (3) because he was statutorily required to register as a sex offender for life no matter what sentence the trial court imposed, (4) because he was statutorily required to serve lifetime postrelease supervision even if the trial court grant his motion, and (5) because he was nearly 50 years old. As to this final point, Hansen cited a study that found "that offenders over the age of 50 have a recidivism rate of only 9.5%." Hansen also suggested that he posed a lower risk of recidivism because his family no longer sees him. He alleged that because "there [was] no evidence to suggest that [he] ever inappropriately touched anyone not related to him," his family no longer seeing him meant that he posed no risk to the "community-at-large."

In addition to his recidivism arguments, in his motion, Hansen argued that there were substantial and compelling reasons to grant his departure motion because he had accepted responsibility for his criminal behavior. Although not entirely clear, Hansen seemingly asserted that he had taken responsibility for his criminal behavior because he had remained in custody since his arrest. He stressed that because he pleaded guilty, he "saved the victims from the hassle and possible embarrassment from testifying in open court." And somewhat relatedly, he asserted that the trial court should grant his motion because in committing aggravated indecent liberties against R.F., R.F. suffered no physical injuries.

At his sentencing hearing, Hansen repeated the arguments in his durational departure motion. The State opposed Hansen's motion, arguing that he failed to assert any substantial and compelling reasons to support a durational departure to 61, 66, or 71months' imprisonment. To support its argument, it had Deputy Mowery testify about Hansen admitting that he had sexual abused R.F. as well as R.F.'s five siblings over the span of many years. Relying on this testimony, the State argued that Hansen posed a greater risk of reoffending than other individuals with his low criminal history. It argued that even though Hansen was nearly 50 years old, a 61-, 66-, or 71-month prison sentence was not long enough to make his age a mitigating factor. It asserted that Hansen's argument about the lack of physical injuries to R.F. ignored that the Legislature categorized his crime as an off-grid person felony. See K.S.A. 2020 Supp. 21-5506(b)(3)(A), (c)(3). Also, it asserted that Hansen's arguments ignored that he had taken advantage of "children [who] trusted [him]" as family.

After hearing these arguments, the trial court gave Hansen the opportunity to address it directly. Hansen took this opportunity to tell the trial court the following:

> "I [want to] apologize for my—to my family members that I have wronged them, and if I
> caused them any mental hardship over this, I apologize. And I was acting under impulse
> and did not think of my consequences on—when I did my actions, and request leniency
> on the Court."

Immediately after Hansen said this, the trial court denied Hansen's durational departure motion. In doing so, it found that Hansen's willingness to complete the sex offender treatment program did not entitle him to a departure sentence because it had not seen any study about the program's effectiveness. It found that the fact that Hansen would be placed on lifetime postrelease supervision after his release from prison should it grant his motion did not entitle Hansen to a departure. It explained that Hansen needed prison's full-time monitoring to protect others from his criminal behavior. It also found that the

4

fact that Hansen had already served 228 days in jail was irrelevant for purposes of determining whether he was entitled to a departure.

Then, the trial court addressed the nature of Hansen's criminal behavior. It questioned whether Hansen had pleaded guilty because he accepted responsibility for his criminal behavior or pleaded guilty to avoid prosecution for his sex crimes against R.F.'s siblings. It noted that studies support that child victims of sexual abuse suffer long-term emotional consequences. It thus found that the "damage" Hansen inflicted was "immense." And it took issue with Hansen's argument about R.F. suffering no physical injuries (1) because Hansen's crime was "a violent offense under Kansas law" and (2) because R.F. was "a helpless child . . . who could not defend himself." As a result, the trial court found that the nature of Hansen's crime against R.F. as well as the evidence indicating that Hansen committed similar crimes against other relatives, meant that Hansen's age, lack of criminal history, and alleged acceptance of responsibility were not substantial and compelling reasons to grant his durational departure motion.

Afterwards, the trial court sentenced Hansen to a hard 25 term of life imprisonment followed by lifetime postrelease supervision. Hansen timely appeals this sentence.

ANALYSIS

Hansen argues that the trial court erred when it sentenced him to life imprisonment followed by lifetime postrelease supervision. Hansen's primary argument is that the trial court abused its discretion when it denied his durational departure motion. He contends that the factors he cited in his durational departure motion cumulatively constituted substantial and compelling reasons entitling him to a departure. Hansen's other argument is that the trial court erred when it ordered him to serve lifetime postrelease supervision

5

should he ever be released from prison. He argues that the applicable statutes and caselaw establish that should he ever be released from prison, he will be paroled.

The State responds that the trial court's denial of Hansen's durational departure motion was reasonable under the facts of his case. As for Hansen's argument that the trial court erred by ordering him to serve lifetime postrelease supervision should he ever be released from prison, the State concedes that the trial court erred in this respect.

Hansen pleaded guilty to aggravated indecent liberties with a child contrary to K.S.A. 2020 Supp. 21-5506(b)(3)(A). Subsection (c)(3) of K.S.A. 2020 Supp. 21-5506 states that this crime is an off-grid person felony because Hansen committed the crime when he was over 18 years old. Meanwhile, K.S.A. 2020 Supp. 21-6627(a)(1) provides that this crime carries a "term of imprisonment for life with a mandatory minimum term of imprisonment of not less than 25 years." K.S.A. 2020 Supp. 21-6627(c) states that a defendant receiving such a sentence "shall not be eligible for parole prior to serving" his or her mandatory minimum term of 25 years' imprisonment. And K.S.A. 2020 Supp. 22-3717(u) states that a defendant sentenced under K.S.A. 2020 Supp. 21-6627 "shall be placed on parole for life and shall not be discharged from supervision by the prisoner review board." Nevertheless, K.S.A. 2020 Supp. 21-6627(d)(1) states that the trial court may impose a departure if it "finds substantial and compelling reasons" to do so "following a review of mitigating circumstances." K.S.A. 2020 Supp. 21-6627(d)(2) contains a list of nonexclusive factors that may constitute mitigating circumstances under subsection (d)(1). These factors include a defendant's lack of criminal history and a defendant's age when he or she committed the crime. K.S.A. 2020 Supp. 21-6627(d)(2)(A), (F). If the trial court grants the defendant's departure motion because sufficient mitigating circumstances exist, the trial court must "state on the record . . . the substantial and compelling reasons for the departure." K.S.A. 2020 Supp. 21-6627(d)(1).

6

When reviewing the trial court's denial of a defendant's motion for a durational departure from his or her mandatory minimum off-grid sentence for violating K.S.A. 2020 Supp. 21-5506, we review the trial court's decision for an abuse of discretion. *State v. Powell*, 308 Kan. 895, 902, 425 P.3d 309 (2018). An abuse of discretion occurs if the trial court's ruling hinges on an error of law, an error of fact, or some other unreasonable basis. 308 Kan. at 902. On the other hand, we exercise unlimited review when considering whether the trial court imposed an illegal sentence as meant under K.S.A. 2020 Supp. 22-3504(a) and (c)(1). See *State v. Sartin*, 310 Kan. 367, 369, 446 P.3d 1068 (2019). Of note, under K.S.A. 2020 Supp. 22-3504(c)(1), we may correct a sentence that "does not conform to the applicable statutory provision, either in character or punishment" at any time.

Here, Hansen's only argument about the trial court's denial of his durational departure motion is that the factors that he cited "as a whole, provided substantial and compelling reasons for a departure from a sentence that required 25 years for parole eligibility, when considered in light of the offense, [his] lack of criminal history, and the purposes of the sentencing guidelines." Thus, Hansen does not argue that the trial court made an error of law or an error of fact. Rather, he argues that the trial court's denial of his motion was unreasonable because he provided it substantial and compelling reasons for it to grant his motion under K.S.A. 2020 Supp. 21-6627(d)(1). So, to establish error on appeal, Hansen has to establish that no reasonable person would have agreed with the trial court's finding that he failed to provide substantial and compelling reasons to support his departure motion. See *Powell*, 308 Kan. at 903. But Hansen cannot meet this burdensome standard under the facts of his case.

For starters, the trial court provided reasonable explanations why it found Hansen's arguments in support of his durational departure motion unpersuasive. It rejected Hansen's arguments that he would be sufficiently reformed if it imposed a KSGA grid sentence of 61, 66, or 71 months' imprisonment because Hansen had not presented

7

evidence establishing that he would no longer pose a risk to others should it impose such a sentence. It stressed that it is well known that sex offenders have recidivism rates. Indeed, this is a fact that our Supreme Court has previously emphasized when affirming the constitutionality of lifetime postrelease supervision for some offenses under K.S.A. 2020 Supp. 21-5506. See *State v. Ross*, 295 Kan. 424, 427, 284 P.3d 309 (2012). Given the preceding in combination with Hansen's admission to sexually abusing five other relatives, it was entirely reasonable for the trial court to find that Hansen's limited criminal history and age were not substantial and compelling reasons supporting Hansen's requested departure.

Although the trial court never explicitly referenced Hansen's argument about posing a low recidivism risk because he no longer had contact with his family, it should go without saying that a defendant's decreased opportunity to commit sex crimes against prior child victims does not constitute a substantial and compelling reason entitling that defendant to a departure. Hansen's argument ignores that upon his release from prison, he could have contact with other children. And in his allocution, Hansen explicitly told the trial court that he committed his sex crimes against his relatives "under impulse." Hansen's admission that he committed his sex crimes against his relatives under impulse supports the fact that until Hansen can control that impulse, he poses a serious risk to any children in his presence.

Relatedly, although the trial court never explicitly referenced Hansen's apology within his allocution, this apology supports the trial court's finding that Hansen's acceptance of responsibility was not a substantial and compelling reason entitling Hansen to a durational departure. Once more, in his allocution apology, Hansen told his family that he was sorry "*if* [he] caused them any mental hardship," while explaining that he had acted without "think[ing] of *my* consequences . . . ." (Emphases added.) Yet, had Hansen truly accepted responsibility for his criminal behavior he would have understood that his behavior undoubtedly caused his family mental hardship. Why else had his family

8

stopped all communication with him? And if Hansen had truly accepted his responsibility, in his allocution apology, Hansen would not have noted that he sexually abused his relatives without thinking of his own consequences. Hansen's focus on his consequences shows that Hansen was more concerned about his punishment for sexually abusing R.F. than the long-term psychological consequences R.F. may suffer from his sexual abuse.

Also, Hansen stating, as he does, that "*if* [he] caused them any mental hardship," he is conceding with his "if" clause that he is not sure that he caused any mental hardship over his sexual abuse of R.F. or over any abuse of his other relatives. Thus, he is admitting that it is only a possibility that he may have caused them any mental hardship.

Lastly, it was entirely reasonable for the trial court to reject Hansen's arguments that the nature of his offense entitled him to a durational departure sentence. In *Ross*, our Supreme Court explained that "[s]exual crimes committed against minors are particularly heinous and produce particularly devastating effects on the victims, including physical and psychological harm." 295 Kan. at 427. In turn, our Supreme Court precedent supports the trial court's finding that Hansen inflicted immense damage on R.F. Also, the trial court properly rejected Hansen's emphasis on the fact that R.F. suffered no physical injuries from the sexual abuse. Because the Legislature has classified Hansen's crime as an off-grid person felony under K.S.A. 2020 Supp. 21-5506(c)(3), it follows that Hansen's crime involved nonconsensual behavior that is properly classified as violent even though R.F. sustained no physical injuries to his body.

In summary, Hansen's arguments about the trial court wrongly denying his durational departure motion are not persuasive. Contrary to Hansen's assertion otherwise, he did not provide the trial court with substantial and compelling reasons under K.S.A. 2020 Supp. 21-6627(d)(1) to depart from his mandatory sentence under K.S.A. 2020 Supp. 21-5506(c)(3) and K.S.A. 2020 Supp. 21-6627(a)(1) of a hard 25 term of life

imprisonment. So, the trial court properly rejected Hansen's arguments in support of his requested durational departure of 61, 66, or 77 months' imprisonment. As a result, we affirm the trial court's denial of Hansen's durational departure motion.

Nevertheless, we vacate the part of Hansen's sentence requiring him to serve lifetime postrelease supervision should he ever be released from prison. K.S.A. 2020 Supp. 22-3717(u) provides that a defendant sentenced under K.S.A. 2020 Supp. 21-6627 must "be placed on parole for life" should the Prisoner Review Board ever release the defendant from prison. Based on K.S.A. 2020 Supp. 22-3717(u)'s plain language, our Supreme Court has held that "[a]n inmate who has received an off-grid indeterminate life sentence can leave prison only if the successor to the Kansas Parole Board grants the inmate parole." *State v. Cash*, 293 Kan. 326, Syl. ¶ 2, 263 P.3d 786 (2011). This means that the trial court has "no authority to order a term of postrelease supervision in conjunction with an off-grid indeterminate life sentence." 293 Kan. 326, Syl. ¶ 2. Since Hansen's sentence will be legal once we vacate the part of his sentence for lifetime postrelease supervision, we do not remand Hansen's case to the trial court for resentencing. See *State v. Fraire*, 312 Kan. 786, 797, 481 P.3d 129 (2021), and *Cash*, 293 Kan. at 330-31 (both vacating defendant's lifetime postrelease supervision sentence without remanding to trial court because vacating this part of defendant's sentence made defendant's sentence legal).

For the preceding reasons, we affirm Hansen's sentence in part and vacate Hansen's sentence in part.

Affirmed in part and vacated in part.