NOT DESIGNATED FOR PUBLICATION

No. 116,517

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DANIEL LEE SEARCY,
*Appellant*.

MEMORANDUM OPINION

Appeal from McPherson District Court; JOHN B. KLENDA, judge. Opinion filed March 9, 2018. Affirmed.

*Christina M. Kerls*, of Kansas Appellate Defender Office, for appellant.

*Gregory T. Benefiel*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., STANDRIDGE and BRUNS, JJ.

PER CURIAM: Daniel Lee Searcy argues that lifetime postrelease supervision is cruel and unusual punishment under the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights as applied to his case. Because that punishment is not unconstitutionally cruel and unusual as applied to Searcy, we find the district court did not err in imposing lifetime postrelease supervision here.

FACTS

In December 2009, 13-year-old J.S.S. reported to her parents that she was in a relationship with a 35-year-old man named "Dan," with whom she had engaged in sex nine times. Subsequent investigation by McPherson police officers revealed Dan to be Searcy, who was 37 years old at the time. During questioning, Searcy admitted to law enforcement that he had had vaginal, anal, and oral sex with J.S.S.

Searcy subsequently pled guilty to one count of aggravated indecent liberties with a child and one count of criminal sodomy. The parties' agreement recommended the standard Kansas Sentencing Guidelines Act (KSGA) sentences for each of the two counts and that the sentences run consecutively. The presentence investigation (PSI) report listed postrelease supervision as 36 months for each count. At Searcy's January 21, 2011 sentencing hearing, the district court followed the parties' plea agreement and imposed a sentence of 131 months in prison and 36 months postrelease supervision.

On May 13, 2015, the Department of Corrections Sentence Computation Unit informed the district court that Searcy's sentence was incorrect under K.S.A. 2011 Supp. 22-3717(d)(1)(G), which mandates lifetime postrelease supervision for offenders convicted of sexually violent crimes. The district court held a new sentencing hearing on March 7, 2016. After hearing argument from the defense that lifetime postrelease supervision would constitute cruel and unusual punishment in this case, the court reimposed the same prison sentence but amended the postrelease supervision period to lifetime without making any factual findings on the matter. Searcy appealed.

On appeal, this court remanded the case for the district court to make factual findings regarding the "appropriateness of lifetime postrelease." The district court held a hearing on remand, at which the parties argued whether lifetime postrelease supervision

2

was constitutional as applied to Searcy. The court ordered additional briefing on the issue and took the matter under advisement.

On February 24, 2017, the district court held that lifetime postrelease supervision was not cruel and unusual punishment in this case and imposed lifetime postrelease supervision.

ANALYSIS

Searcy argues imposition of lifetime postrelease supervision is cruel and unusual punishment in violation of the Eighth Amendment and § 9 of the Kansas Constitution Bill of Rights as applied to his case. The State contends the punishment is constitutional. The constitutionality of a sentencing statute is a question of law subject to unlimited appellate review. *State v. Hilt*, 299 Kan. 176, 202, 322 P.3d 367 (2014).

A statute is presumed constitutional and all doubts must be resolved in favor of its validity. *State v. Soto*, 299 Kan. 102, 121, 322 P.3d 334 (2014). Due to the separation of powers principle, "if there is any reasonable way to construe a statute as constitutional, courts have the duty to do so by resolving all doubts in favor of constitutionality." *State v. Mossman*, 294 Kan. 901, 906-07, 281 P.3d 153 (2012) (citing *State v. Laturner*, 289 Kan. 727, 735, 218 P.3d 23 [2009]).

When a defendant challenges his or her sentence as cruel and unusual, appellate courts use a bifurcated standard of review:  "All of the evidence is reviewed, but not reweighed, to determine whether it is sufficient to support the district court's factual findings, but the legal conclusions that the district court draws from those facts are reviewed de novo." *State v. Ross*, 295 Kan. 424, 425-26, 284 P.3d 309 (2012).

Kansas courts consider three factors to determine whether a sentence is cruel or unusual in violation of § 9 of the Kansas Constitution Bill of Rights. See *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978). The *Freeman* factors are as follows:

"(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

"(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." 223 Kan. at 367.

No single factor is controlling. Appellate courts consider the factors collectively, but one factor may "weigh so heavily that it directs the final conclusion." *State v. Ortega-Cadelan*, 287 Kan. 157, 161, 194 P.3d 1195 (2008).

Analysis under the first *Freeman* factor requires the court to consider the nature of the offense and the character of the offender, with particular regard to the degree of danger presented to society. *Ross*, 295 Kan. at 426. The factors under this prong are "inherently factual, requiring examination of the facts of the crime and the particular characteristics of the defendant." *Ortega-Cadelan*, 287 Kan. at 161. In addition, "[t]his analysis may consider the offender's mental state and motive in committing the crime, the actual harm caused to the victim or to society by the offender's conduct, any prior criminal history of the offender, and the offender's propensity for violence." *Ross*, 295 Kan. at 429.

4

Here, the district court judge made only the following factual findings:

"In regard to the first *Freeman* factor, it's clear that the defendant committed two very serious offenses which involved intercourse and sodomy with the child. It appears that the defendant was not taking any responsibility for these crimes. He assumed she was of legal age and he alleges he was raped and he was the victim and, in effect, tries to mitigate the seriousness of these offenses, said he was drinking heavily and had trouble recalling and nothing about his character would mitigate the seriousness of these offenses.

"So, the court does find that as of the first factor that the imposition of lifetime post-release supervision is not, therefore, unconstitutional and should be imposed."

On appeal, Searcy does not challenge the district court's factual findings. Rather, he argues that he engaged in a "voluntary relationship with a person who was a willing participant." He contends that J.S.S. initiated contact with Searcy, made him think she was older than she was by telling him her last boyfriend was 27 years old, and initiated sexual activity with Searcy. Searcy acknowledges that the *Mossman* court held that the voluntariness of the complaining witness should not be considered because sex with a minor is a serious crime regardless of the minor's willingness. See 294 Kan. at 910. Searcy seeks to distinguish his case, however, claiming that he did not know J.S.S.'s age and cut off the relationship when he learned she was 14. But our Supreme Court held in *State v. Funk*, 301 Kan. 925, 939, 349 P.3d 1230 (2015), that similar factors—"Funk's claims about H.D.'s role in instigating the contact, the lack of harm to H.D., and Funk's belief H.D. was 16"—did not weigh in Funk's favor because "[i]llegal sexual intercourse with a minor is a serious offense, and the victims of those crimes are legally considered incapable of consenting to such acts."

Searcy also argues that he was sexually abused as a child, citing *State v. Proctor*, 47 Kan. App. 2d 889, 280 P.3d 839 (2012) (lifetime postrelease supervision unconstitutional as applied) (*Proctor I*); *State v. Proctor*, No. 104,697, 2013 WL

6726286 (Kan. App. 2013) (unpublished opinion) (same result on remand) (*Proctor II*). In *Proctor II*, a panel of this court held that lifetime postrelease supervision was unconstitutional as applied to Proctor, relying heavily on the first *Freeman* factor. The *Proctor II* court cited several factual findings made by the district court: Proctor was only 19 years old and lacked a criminal record, there was no evidence he was a "serial sex offender with a trail of victims," and expert testimony established that he would benefit from therapy and was not a likely future offender. 2013 WL 6726286, at *4. The court emphasized that Proctor was sentenced to probation, which "the State agreed and the district court found . . . was compatible with the public safety." 2013 WL 6726286, at *4. The panel noted probation is "difficult to meld with the harshest component of lifetime postrelease supervision." 2013 WL 6726286, at *4.

Unlike the court in *Proctor II*, the district court here did not grant Searcy probation, but rather sentenced him to consecutive prison sentences totaling 131 months for his convictions. And Searcy, who was 36 years old at the time of his crime, had a substantial criminal history. In contrast to *Proctor II*, Searcy presented no evidence about his risk of recidivism or whether therapy would benefit him. In fact, Searcy's claim that he was sexually abused as a child was not even brought up until sentencing, and the district court made no findings on the issue. This court therefore has no findings of fact to review in its analysis. See *State v. Seward*, 289 Kan. 715, 720-21, 217 P.3d 443 (2009) (failure to object to inadequate findings and conclusions forecloses appellate argument). Significantly, the *Proctor II* court specified that its ruling was limited to "the facts of [that] case at the time of Proctor's sentencing and decides only the constitutionality of lifetime postrelease supervision as to Proctor alone." 2013 WL 6726286, at *1. That case does not control here.

Finally, Searcy argues that at his original sentencing, "neither the State nor the district court appeared to view him as a particularly dangerous threat" because neither sought an upward departure in his term of postrelease supervision from 36 months to a

lifetime sentence. However, the State agreed in the parties' plea negotiations to recommend the standard KSGA sentence for the amended counts of aggravated indecent liberties with a child and criminal sodomy. The court sentenced Searcy according to the PSI report, which erroneously listed postrelease supervision as 36 months for each count. Lifetime postrelease supervision is not unconstitutional as applied to Searcy merely because the State recommended the "standard" sentence apply, and the district court did not sua sponte issue lifetime postrelease when it believed that a lesser term applied to Searcy.

The second *Freeman* factor requires comparing a challenged punishment with punishments imposed in the same jurisdiction for more serious offenses. 223 Kan. at 367. Here, the district court stated:

> "The court, again, finds that taking into consideration those points which were quoted in the *Mossman* decision, lifetime post-release supervision is not grossly disproportionate to the other sentences when you consider the penological purposes, the seriousness of these crimes and the other considerations discussed as I noted in the first *Freeman* factor."

Searcy argues that he would have received a less severe postrelease supervision sentence had he committed murder:  36 months' postrelease supervision for second-degree murder and lifetime *parole* for first-degree murder. And, citing the United States Supreme Court's decision in *Kennedy v. Louisiana*, 554 U.S. 407, 412-13, 128 S. Ct. 2641, 171 L. Ed. 2d 525 (2008), Searcy argues that forcible child rape is a less serious crime than murder; and unlike the case in rape, there is no possibility of victim recovery from murder. Searcy cites seven additional offenses that he contends are "more serious" than indecent liberties with a child but carry 36-month postrelease supervision terms: aggravated kidnapping, K.S.A. 2017 Supp. 21-5408 (severity level 1 person felony); aggravated trafficking, K.S.A. 2017 Supp. 21-5426(b) (severity level 1 person felony); electronic solicitation of a child, K.S.A. 2017 Supp. 21-5509(b)(2) (severity level 1

person felony); furtherance of terrorism or illegal use of weapons of mass destruction, K.S.A. 2017 Supp. 21-5423 (severity level 1 person felony); manufacture of controlled substances, K.S.A. 2017 Supp. 21-5703 (drug severity level 1 felony); human trafficking, K.S.A. 2017 Supp. 21-5426(a) (severity level 2 person felony); and voluntary manslaughter, K.S.A. 2017 Supp. 21-5404 (severity level 3 person felony).

Our Supreme Court, however, has rejected arguments that focus on the length of postrelease supervision and instead looks to the total length of the sentence, including incarceration. *Mossman*, 294 Kan. at 912-13; *State v. Cameron*, 294 Kan. 884, 892-93, 281 P.3d 143 (2012). And Searcy does not provide any argument or authority that a lifetime sentence of *parole* for first-degree murder is less severe than a lifetime sentence of *postrelease supervision* here. An argument not supported by relevant authority is waived. *State v. Raskie*, 293 Kan. 906, 919, 269 P.3d 1268 (2012) (failure to support point with pertinent authority or without showing why it is sound despite lack of supporting authority is akin to failing to brief issue). The district court did not err in determining that a term of lifetime postrelease supervision is not grossly disproportionate to the sentence imposed for other arguably more severe offenses in Kansas.

The third *Freeman* factor requires a comparison of the sentence imposed with punishments in other jurisdictions for the same offense. 223 Kan. at 367. On appeal, Searcy notes that only four states impose lifetime postrelease supervision for the offense of indecent liberties with a child, and only two states have mandatory postrelease supervision for this class of offenses but allow the possibility of release. He also states that 12 states impose mandatory lifetime postrelease supervision, but those states do not apply it to this class of offenses. Our Supreme Court addressed this argument in *Mossman*:

"[I]t seems fair to say that less than half of states provide for lifetime postrelease supervision of some or all sex offenders and, because several states have a mechanism for termination of the postrelease supervision under certain conditions, only a handful of states impose punishment as absolute as Kansas' requirement. Nevertheless, Kansas is not alone in imposing mandatory lifetime postrelease supervision for crimes such as [aggravated indecent liberties with a child], and we are not aware of any court that has found lifetime postrelease supervision of a violent sex offender to be cruel and unusual punishment." 294 Kan. at 920.

Although Searcy claims that *Mossman* was wrongly decided on this point, he does not present a new argument to support a contrary result. We find the *Mossman* considerations under the third *Freeman* factor support the imposition of lifetime postrelease supervision. As such, we decline to find Searcy's sentence of lifetime postrelease supervision unconstitutional under § 9 of the Kansas Constitution Bill of Rights.

While Searcy also claims that his sentence is unconstitutional under the Eighth Amendment to the United States Constitution, he did not provide separate argument under the federal analysis. There are two types of challenges under the Eighth Amendment: (1) a case-specific challenge that the sentence is disproportionate "given all the circumstances in a particular case," *Graham v. Florida*, 560 U.S. 48, 59, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010); and (2) a categorical challenge "that an entire class of sentences is unconstitutionally disproportionate given the severity of the sentence, the gravity of the crime, and the type of offender." *United States v. Williams*, 636 F.3d 1229, 1233 (9th Cir. 2011). Searcy challenged the constitutionality of his sentence only as applied, and he acknowledges that the test for an as-applied challenge under the Eighth Amendment is "virtually identical" to the *Freeman* analysis discussed above. The district court made no separate findings of fact or conclusions of law specific to the Eighth Amendment, and thus this court need not conduct a separate review.

9

For the reasons stated above, Searcy failed to establish that imposition of lifetime postrelease supervision was unconstitutional under either the Eighth Amendment or § 9 of the Kansas Constitution Bill of Rights as applied to his case. The district court did not err.

Affirmed.